IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO.

| | |
|---|---|
| DEBRA JONES, individually, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMAND** |
| TRUIST BANK, ) | |
| a North Carolina corporation, ) | |
|     Defendant. ) | |

_____

NOW COMES Plaintiff, Debra Jones, by and through her undersigned counsel, complains of Defendant Truist Bank as follows:

1. Plaintiff asserts claims arising under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq*., and Title VII of the Civil Rights Act of 1964, as amended. This court has jurisdiction over these claims under 28 U.S.C. § 1331.

2. This Court is the proper venue for this action under 28 U.S.C. § 1391.

3. Plaintiff Debra Jones, (hereinafter "Plaintiff" or "Jones"), is a qualified individual with disabilities as defined by Title I of the ADA.

4. Plaintiff is a citizen of the United States and the State of North Carolina and presently resides in Nash County, North Carolina.

5. Plaintiff was, at all times material hereto, a citizen of the State of North Carolina, residing in Nash County, North Carolina.

6.  The unlawful practices alleged were committed within the State of North Carolina, specifically in Nash County, North Carolina.

7.  At all times alleged herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f). Plaintiff further contends that at all times alleged herein, Defendant Truist Bank (hereinafter "Defendant" or "Truist") was an "employer" within the meaning of 42 U.S.C. § 2000e(f).

8.  Upon information and belief, Defendant is a corporation qualified to do business in Nash County, and the State of North Carolina; and has its principal place of business in Charlotte, North Carolina.

9.  Defendant is an employer engaged in an industry that affects commerce and employs more than fifteen (15) employees. All conditions precedent to jurisdiction have occurred or been complied with, as the plaintiff timely submitted a complaint of disability discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 433-2025-01526. On or about February 21, 2025, the EEOC issued the plaintiff a "Notice of Right to Sue."

10.  Plaintiff contends that the constitutional and statutory violations alleged herein arose from Defendant's official policy or custom of engaging in, condoning or failing to address issues of discrimination and retaliation within its workplace.

11.  At all times material hereto, Plaintiff began her employment in approximately April 2024 as a Relationship Banker in Rocky Mount, North Carolina.

12.  Plaintiff contends that she was employed as a Relationship Banker, and Plaintiff worked

2

Case 5:25-cv-00268-FL   Document 1   Filed 05/21/25   Page 2 of 10

full-time, at least forty (40) hours per week, Monday through Friday.

13. Plaintiff contends that she was subjected to discrimination and retaliation based on her being a qualified individual with disabilities. Plaintiff has a diagnosis of major depressive disorder, generalized anxiety disorder, and autoimmune disorder vitiligo. Defendant was aware of Plaintiff's disabilities.

14. Plaintiff further contends that in June 2024 during her last week of her new hire training, Defendant's manager, Matthew Korr (hereinafter "Korr") placed a Chucky doll – the doll that kills people, in Plaintiff's office chair, which interfered with Plaintiff's training. Korr's actions caused harm to Plaintiff's disabilities, worsened her medical condition and caused Plaintiff to seek immediate medical attention. Plaintiff further contends that Korr laughed when he saw Plaintiff's reaction to the Chucky doll.

15. Plaintiff contends that Korr was aware of her disabilities prior to the June 2024 incident involving the Chucky doll. Plaintiff further contends that Korr was aware of her fear of dolls and how her fear of dolls negatively affected her disabilities as Plaintiff had shared this with Korr when he had invited Plaintiff to his home for a team cookout.

16. Plaintiff further contends that she was treated by her medical provider on the same day of the Chucky doll incident and was placed on a medical leave to treat her disabilities. Plaintiff's medical provider placed her on a medical leave for eight (8) weeks. Plaintiff further contends that she was newly diagnosed with post-traumatic stress disorder ("PTSD") after the Chucky doll incident.

17. Plaintiff contends that she was released to return to work on August 15, 2024, with an approved reasonable accommodation to leave work at 3:00 p.m., three (3) times per week for treatment of her autoimmune disorder. Plaintiff's treatment was for flare ups that started as a result of the Chucky doll incident.

18. Upon return to work, Plaintiff was assigned a new manager, Jennifer Briley ("Briley"). Briley immediately informed Plaintiff that she was aware of the Chucky doll incident and placed Plaintiff in a different office.

19. Plaintiff contends that she did not repeat the new hire training after returning to work but participated in hands on experience with the head teller on teller training.

20. Plaintiff contends that on or about November 15, 2024, Plaintiff discovered a fraudulent check. After the discovery, Briley made a joke in the presence of Plaintiff and Briley's team that Plaintiff was always fraudulent vigilant. Briley and the team laughed at the joke even though Plaintiff was doing her job when she made the fraudulent discovery.

21. Plaintiff further contends that on or about November 15, 2024, Briley and Briley's manager, Tracy Wood ("Wood") requested to meet with Plaintiff to address mistakes that Plaintiff was allegedly making. In that meeting, Plaintiff told Briley that Briley's joke about Plaintiff being fraudulent vigilant was offensive.

22. Based upon information and belief, Plaintiff was performing her job satisfactorily. Plaintiff contends that Plaintiff and her coworkers alike were subjected to making some mistakes but Plaintiff was treated differently than her coworkers when she made mistakes. Plaintiff contends that she was subjected to disparate treatment based on her disabilities.

23.     Plaintiff contends that on or about November 19, 2024, Briley presented Plaintiff with a performance concerns document.

24.     Plaintiff contends that on November 19, 2024, Plaintiff sent an email to H.R. White, Defendant's District Manager, regarding the meeting with Briley and Wood when she was presented with the performance concerns document. Plaintiff notified White that she believed that she was treated differently than her coworkers by Briley based on her disabilities and that Briley would discuss Plaintiff's approved reasonable accommodations with the team. White referred Plaintiff to Lucinda Austin, a Human Resources Manager, who met with Plaintiff regarding her concerns but Plaintiff continued to be subjected to Briley's discrimination and retaliation.

25.     Based upon information and belief, Briley was out of work on January 28, 2025.

26.     Plaintiff contends that after Briley returned to work on January 29, 2025, Briley approached Plaintiff in the teller line in the presence of a coworker. Briley spoke to Plaintiff in an aggressive loud tone stating that Plaintiff should have messaged Briley yesterday that Plaintiff was leaving work early. Plaintiff had notified Defendant's lead person that she was leaving early on January 28, 2025, to attend a doctor's appointment based on her approved reasonable accommodation.

27.     Plaintiff contends that on or about January 29, 2025, Briley came into Plaintiff's office and stated that Plaintiff would have to take her lunch break every day at the same time, that Plaintiff could not leave earlier than her scheduled appointment time for her approved reasonable accommodation and that because Defendant had not received Plaintiff's updated

documents, Plaintiff would now be required to leave work at 4:00 p.m., instead of 3:00 p.m. Plaintiff contends that she would take her lunch break at 2:00 p.m., on days that she had her treatments at 3:00 p.m.

28. Based upon information and belief, Defendant allowed Plaintiff's coworkers to leave work early and Plaintiff's coworkers were not required to take their lunch breaks at the same time every day. Plaintiff contends that she was subjected to disparate treatment based on her disabilities.

29. Plaintiff further contends that in the meeting with Briley on January 29, 2025, Plaintiff discussed the incident from the teller line when Briley spoke to Plaintiff in an aggressive loud tone in the presence of a coworker. Plaintiff contends that Briley became angry, told Plaintiff that she would receive another write up and slammed Plaintiff's office door as she walked out of Plaintiff's office.

30. Plaintiff contends that after the meeting with Briley on January 29, 2025, Wood came into Plaintiff's office thereafter and told Plaintiff that Plaintiff's approved reasonable accommodation to leave work at 3:00 p.m., was affecting Plaintiff's coworkers because they also needed time off. Wood further stated to Plaintiff that Wood did not believe this job was the right fit for Plaintiff and that Plaintiff cannot keep using her anxiety and emotional problems as an excuse. Wood gave Plaintiff a document and notified Plaintiff that she would be terminated next month if she did not improve.

31.   Plaintiff contends that she suffered several panic attacks as a result of the meetings with Briley and Wood on January 29, 2025.  Plaintiff then met with her medical provider  and was taken out of work for treatment of her disabilities.

32.   Plaintiff contends that she was notified on or about March 12, 2025 by her coworker, based on a directive from Briley, that Plaintiff had to come get her personal belongings from Defendant.  On or about April 14, 2025, Wood notified Plaintiff that Defendant would hold her belongings for forty-five (45) days.

33.  Plaintiff contends that she was routinely subjected to discrimination and retaliation based on her disabilities.  Plaintiff contends that she is a member of a protected class and was discriminated against and retaliated against by her supervisor, Jennifer Briley and Briley's supervisor, Tracy Wood, based on her disabilities. Plaintiff further contends that the employer knew or should have known of the discrimination and retaliation and failed to take prompt effective remedial action.

34.    Plaintiff  contends that all supervisors, employees and coworkers were, at all times herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondeat superior, the Defendant is vicariously liable for acts herein alleged against those supervisors, employees and coworkers. Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment, Plaintiff  alleges that the employer remains liable for its negligent supervision and retention of those employees.

35. Plaintiff contends that she was subjected to discrimination and retaliation based on her disabilities and that Defendant intended to cause, and did cause, Plaintiff to suffer severe emotional distress. Plaintiff further contends that Defendant had knowledge that Plaintiff was a qualified individual with disabilities.

36. Plaintiff contends that she was subjected to disparate treatment when she was deliberately treated differently based on her disabilities and that Defendant intended to cause, and did cause, Plaintiff to suffer severe emotional distress. Plaintiff further contends that Defendant had knowledge that Plaintiff was a qualified individual with disabilities.

37. As a result of the aforementioned acts, Plaintiff contends that she has suffered pecuniary and non-pecuniary losses, lost past and future wages, job benefits, and has suffered and will continue to suffer emotional pain and suffering, inconvenience, embarrassment, mental anguish, and other non- pecuniary losses in an amount to be determined at trial.

## COUNT ONE

Defendant Truist is liable to Plaintiff for discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. The actions of Defendant constitute unlawful, intentional discrimination within the meaning of the ADA.

## COUNT TWO

Defendant Truist is liable to Plaintiff for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. The actions of Defendant constitute unlawful, intentional discrimination within the meaning of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT THREE

The Defendant is liable to the Plaintiff for the Negligent Infliction of Emotional Distress.

## COUNT FOUR

The Defendant is liable to the Plaintiff for the Intentional Infliction of Emotional Distress.

## COUNT FIVE

The Defendant is liable to Plaintiff for negligent supervision and retention of those employees.

**WHEREFORE, Plaintiff prays the Court that it:**

1. Award Plaintiff compensatory damages for pecuniary losses and non-pecuniary losses, together with attorney's fees and the costs and disbursements of this action;

2. Award Plaintiff compensatory damages in an amount that would fully compensate the Plaintiff for the humiliation, embarrassment, emotional distress and mental anguish caused by Defendant's violation of the law;

3. Award Plaintiff backpay with pre-judgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

4. Grant Plaintiff a trial by jury on all issues of facts; and

5. Grant such other and further relief as this court may deem just and proper.

This the 21st day of May, 2025.

LISA WALKER, ATTORNEY AT LAW PLLC

BY: __/s/Lisa Walker_____
Lisa Walker
N.C. Bar #47809
P.O. Box 1473

9

Case 5:25-cv-00268-FL   Document 1   Filed 05/21/25   Page 9 of 10

Knightdale, NC  27545
Telephone:    (919) 390-1316
Facsimile:     (919) 746-7845
Email: lisa@lisawalkerlaw.com
*Attorney for Plaintiff*