IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

DEBRA JONES, )
)
Plaintiff, )
)      **Civil Action No.:**
)      **5:25-cv-00268-FL**
v. )
)
)      **BRIEF IN SUPPORT OF**
TRUIST BANK, )      **DEFENDANT'S**
)      **MOTION TO DISMISS**
Defendant. )
)
_____ )

## STATEMENT OF THE CASE

Plaintiff Debra Jones ("Plaintiff") brings this action against her employer Truist
Bank ("Truist" or "Defendant"), asserting claims for disability discrimination (specifically,
disparate treatment) in violation of the Americans with Disabilities Act (Count I),
discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964
(Count II), negligent infliction of emotional distress (Count III), intentional infliction of
emotional distress (Count IV), and negligent supervision and retention (Count V).

## SUMMARY OF THE ARGUMENT

Defendant has moved to dismiss these claims on the grounds that Plaintiff has failed
to state a claim upon which relief can be granted for each count asserted in the Complaint.
Truist respectfully requests that the Court dismiss Plaintiff's claims pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure, for the reasons described below.

As to Count I, Plaintiff fails to plausibly allege the required elements of her disparate treatment claim under the ADA. Although she alleges that she has been diagnosed with various medical conditions, Plaintiff does not allege that these conditions substantially limited any of her major life activities as required to establish an ADA-covered disability. Moreover, the Complaint contains no facts regarding the essential functions of her Relationship Banker position or otherwise plausibly alleging that she was a qualified individual. Even though she purports to assert an ADA claim for disparate treatment, Plaintiff fails to allege facts indicating that she was subjected to any adverse employment action or that similarly situated individuals outside the protected class received more favorable treatment.

Regarding Count II, Plaintiff fails to allege that she was subjected to discrimination due to any of the protected characteristics covered by Title VII. In fact, the Complaint contains no mention of Plaintiff's race, color, religion, sex, or national origin. Instead, the Complaint alleges only that Plaintiff was subject to discrimination and retaliation because of her disability, which Title VII does not address. Nor does Plaintiff allege any facts indicating that she engaged in protected activity under the statute or sustained any material retaliatory action.

Plaintiff's claim of negligent infliction of emotional distress (Count III) fails under North Carolina law, given her failure to allege any negligent conduct. Instead, Plaintiff relies solely upon allegations of discrimination and retaliation, which are inherently intentional and insufficient to state a claim for negligent infliction of emotional distress.

Plaintiff's intentional infliction of emotional distress claim (Count IV) fares no better, as she fails to allege workplace conduct satisfying the stringent "extreme and outrageous" standard established by North Carolina courts.

As to Count V, Plaintiff fails to plausibly allege the required elements of a negligent supervision and retention claim. She alleges no facts indicating a Truist employee engaged in tortious conduct that would be actionable under North Carolina common law, that this employee was incompetent or unfit, or that Truist had actual or constructive advance notice of this incompetency or unfitness. Instead, Plaintiff bases her negligent supervision and retention claim on alleged violations of federal employment statutes, which do not suffice.

## STATEMENT OF ALLEGED FACTS[1]

Plaintiff began her employment with Truist in April 2024 as a Relationship Banker. (Doc. 1 ¶ 11.) She has been diagnosed with major depressive disorder, generalized anxiety disorder, and vitiligo, which is an autoimmune disorder. (*Id*. at ¶ 13.)

In June 2024, during the last week of Plaintiff's new hire training, manager Matthew Korr [sic—"Korff"] placed a "Chucky doll" in Plaintiff's office chair. (*Id*. at ¶ 14.) According to Plaintiff, Korff laughed when he saw Plaintiff's reaction to the doll. (*Id*.) Plaintiff alleges that Korff's actions interfered with her training, exacerbated her medical condition, and prompted her to seek immediate medical attention. (*Id*.) According to

---

[1] For the limited purposes of this Motion to Dismiss, Defendant states--as it must, at this stage of the litigation—the facts as alleged by Plaintiff in her Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nothing about this filing should be construed as an admission of the veracity of Plaintiff's allegations, many of which are disputed.

3

Plaintiff, she had previously told Korff about her fear of dolls and how this fear allegedly impacted her disabilities. (*Id.*)

The same day she encountered the Chucky doll, Plaintiff received treatment from her healthcare provider and was placed on a medical leave of absence for the ensuing eight (8) weeks. (*Id.* at ¶ 16.) She was newly diagnosed with post-traumatic stress disorder ("PTSD") after the Chucky doll incident. (*Id.*)

On August 15, 2024, Plaintiff was released to return to work, with an approved accommodation enabling her to leave work at 3:00 PM three times a week for treatment of auto-immune disorder flare-ups allegedly resulting from the Chucky doll incident. (*Id.* at ¶ 17.) Upon returning to work, Plaintiff was assigned a new manager, Jennifer Briley ("Briley"), who told Plaintiff she was aware of the Chucky doll incident and provided her a different office. (*Id.* at ¶ 18.)

On November 15, 2024, Plaintiff discovered a fraudulent check while performing her job duties. (*Id.* at ¶ 20.) Briley joked, in the presence of Plaintiff and other team members, that Plaintiff was always "fraudulent vigilant." (*Id.*) Briley and the team laughed at the joke. (*Id.*)

That same day, Briley and her manager, Tracy Wood ("Wood"), met with Plaintiff to address Plaintiff's job-related errors. (*Id.* at ¶ 21.) During that meeting, Plaintiff stated that Briley's joke about Plaintiff being "fraudulent vigilant" was offensive. (*Id.*) Plaintiff contends that she and her co-workers alike made job-related errors, but that Plaintiff was treated differently than her co-workers when she made mistakes. (Doc. 1 ¶ 22.)

On November 14, 2024, Briley presented Plaintiff with a "performance concerns document." (*Id*. at ¶ 23.) On November 19, 2024, Plaintiff sent an email to District Manager H.R. White ("White") regarding the meeting in which Briley and Wood delivered the document. (*Id*. at ¶ 24.) In that email, Plaintiff informed White that she believed Briley was treating her differently than her co-workers based on her disabilities and that Briley discussed Plaintiff's approved accommodations with the team. (*Id*.) White referred Plaintiff to Human Resources Manager Lucinda Austin, who met with Plaintiff to discuss Plaintiff's concerns. (*Id*.)

On January 28, 2025, when Briley was out of work, Plaintiff notified Truist's lead person that she was leaving early that day to attend a doctor's appointment, based on her approved accommodation. (*Id*. at ¶¶ 25-26.) The next day, January 29th, Briley approached Plaintiff in the teller line, in front of a co-worker, and told Plaintiff, in "an aggressive loud tone," that Plaintiff should have messaged Briley the previous day to inform her of Plaintiff's early departure. (*Id*. at ¶¶ 25-26.)

On January 29, 2025, Briley came into Plaintiff's office to tell her that Plaintiff would have to take her lunch break at the same time every day, that Plaintiff could not leave earlier than her scheduled appointment time for her approved accommodation, and that because Truist had not received Plaintiff's updated documents, Plaintiff would now be permitted to leave work at 4:00 PM, instead of 3:00 PM. (*Id*. at ¶ 27.) Plaintiff had been taking her lunch break at 2:00 PM on days that she had treatments scheduled at 3:00 PM.

(*Id.*) According to Plaintiff, Truist allowed her coworkers to leave work early and did not require them to take their lunch breaks at the same time every day. (*Id.* at ¶ 28.)

While meeting with Briley, Plaintiff discussed the incident on the teller line when Briley had spoken to her in a loud aggressive tone in the presence of a coworker. (*Id.* at ¶ 29.) Briley became angry, told Plaintiff she would receive another write-up, and slammed the door as she left Plaintiff's office. (*Id.*)

After Plaintiff's meeting with Briley on January 29th, Wood came into Plaintiff's office and told Plaintiff that her approved accommodation to leave work at 3:00 PM was affecting Plaintiff's co-workers because they also needed time off. (*Id.* at ¶ 30.) Wood also said she did not believe the job was the right fit for Plaintiff and Plaintiff could not keep using her anxiety and emotional problems as an excuse. (*Id.*) Wood gave Plaintiff "a document" and notified Plaintiff she would be terminated the next month if she did not show improvement. (*Id.*)

Plaintiff allegedly sustained "several panic attacks" due to the meetings with Briley and Wood on January 29th. (*Id.* at ¶ 31.) Plaintiff met with her medical provider and was taken out of work for treatment of her alleged disabilities. (*Id.*) On March 12, 2025, Plaintiff received notice from a co-worker, based on a directive from Briley, that Plaintiff had to collect her personal belongings from Truist. (*Id.* at ¶ 33.) On April 14, 2025, Wood notified Plaintiff that Truist would hold her belongings for forty-five (45) days. (*Id.*)

## QUESTIONS PRESENTED

I.  Whether Plaintiff plausibly alleges facts establishing the required elements of her disparate treatment claim under the ADA.

II.  Whether Plaintiff plausibly alleges claims of discrimination and retaliation under Title VII.

III.  Whether Plaintiff plausibly alleges a claim of negligent infliction of emotional distress under North Carolina law.

IV.  Whether Plaintiff plausibly alleges the elements of intentional infliction of emotional distress under North Carolina law.

V.  Whether Plaintiff plausibly alleges the necessary elements of negligent supervision and retention under North Carolina law.

## ARGUMENT AND AUTHORITIES

### Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim upon which relief may be granted challenges the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Those factual allegations, however, "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545 and 547. A formulaic recitation of a cause of action's elements supported by mere conclusory statements are insufficient to meet this standard. *Id.* at 545; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to achieve factual plausibility,

7

plaintiffs must allege more than "a naked assertion . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. A claim will only have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although an employment discrimination plaintiff need not plead a *prima facie* case to withstand a motion to dismiss, she must still plead every element of the cause of action. *Miller v. Md. Dep't of Nat. Res*., 813 Fed. Appx. 869, 874 (4th Cir. 2020) (citation omitted).

**I.       Plaintiff fails to plausibly allege a disparate treatment claim under the ADA.**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a disparate treatment claim, a plaintiff must prove: "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Off. of the Cts*., 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted) (alteration in original); *see also EEOC v. McLeod Health, Inc*., 914 F.3d 876, 883 (4th Cir. 2019). Plaintiff failed to plausibly allege ***any*** of these necessary elements.

**A.       Plaintiff does not allege that her medical conditions substantially limited one or more major life activities, as required to establish a disability.**

To establish a cause of action under the ADA, a plaintiff must show that she has a "disability" as defined by the statute. *Miller*, 813 Fed. Appx. at 875-876. A disability under

the ADA is "a physical or mental impairment that substantially limits one or major life activities of [the plaintiff]." 42 U.S.C. § 12102(1)(A). Although a plaintiff need not "provide extensive detail as to [her] medical condition," she must "plead a disability claim above a speculative level." *Hice v. Mazzella Lifting Techs., Inc*., 589 F. Supp.3d 539, 547 (E.D. Va. 2022) (cleaned up).

In her Complaint, Plaintiff alleges that she "has a diagnosis of" major depressive disorder, generalized anxiety disorder, and that after the Chucky doll encounter, she was "newly diagnosed" with PTSD. (Doc. 1 ¶¶ 13, 16.) Plaintiff further asserts that she twice took medical leave for treatment of her alleged disabilities (*id*. at ¶¶ 16, 31) and, upon returning to work after her initial leave of absence, needed to leave work early three times each week "for treatment of her autoimmune disorder." (*Id*. at ¶ 17.)

Plaintiff does not, however, allege facts suggesting that her diagnoses resulted in impairments that substantially limited any of her major life activities. Her generalized statements that she has been diagnosed with various medical conditions that require treatment do not suffice. *See, e.g., Raylor v. Revature LLC*, No. 1:22-cv-1153, 2025 WL 711961, at *6 (E.D. Va. Mar. 5, 2025) (the plaintiff's assertions that she had a disability for which she has received medical treatment failed to adequately plead an ADA-covered disability); *Scott v. Walmart Inc*., No. 23-cv-02228, 2025 WL 359059, at *10 (D. Md. Jan. 30, 2025) (allegations that the plaintiff's anxiety, panic, depression, stress attacks, back and foot injuries were mental and physical impairments that substantially limited one or more life activities, absent factual allegations explaining how these ailments substantially

9

limit the plaintiff's major life activities, did not plausibly allege ADA disability); *May v. Univ. Health Sys. of E. Carolina, Inc*., No. 4:21-CV-00014-D, 2021 WL 5868135, at *9 (E.D.N.C. Dec. 9, 2021) (the plaintiff failed to plausibly allege that her anxiety and depression substantially limited any of her major life activities).

### B. Plaintiff fails to allege that she was able to perform her essential job functions, with or without reasonable accommodations, as required to demonstrate she was a qualified individual.

The ADA permits only qualified individuals to state a discrimination claim. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal*., 31 F.3d 209, 212 (4th Cir. 1994). The statute defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A job function is essential when "'the reason the position exists is to perform that function,' when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs*, 780 F.3d at 579 (citing 29 C.F.R. § 1630.2(n)(2)).

In her Complaint, Plaintiff fails to articulate the essential functions of her job or allege any facts demonstrating she could perform those functions with or without reasonable accommodations. Instead, she offers only conclusory assertions, based "upon information and belief," that she was performing her job duties satisfactorily, notwithstanding her admitted job-related errors. (Doc. 1 ¶¶ 21-22.) Her failure to plausibly allege she was a qualified individual within the ADA's meaning warrants dismissal of her

claim. *See Futrell v. Blanton's Air, Plumbing & Elec., LLC*, 5:23-CV-739, 2024 WL 3852132, at \*4 (E.D.N.C. Aug. 16, 2024); *Chisholm v. Mountaire Farms of N.C. Corp.*, 629 F. Supp.3d 368, 375 (M.D.N.C. 2022); *Thompson v. Wakefern Food Corp.*, No. RPB-15-1240, 2015 WL 9311972, at \*6 (D. Md. Dec. 13, 2015); *see also Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp.3d 616, 623 (D. Md. 2014) ("Without even a cursory description of what kind of work the Plaintiff does, she has simply recited the elements of the cause of action.").

### C. Plaintiff bases her ADA discrimination claim on allegations of disparate treatment, but she identifies no adverse employment action.

An ADA disparate treatment claim requires a plaintiff to allege specific facts indicating that the alleged discrimination adversely impacted the "terms, conditions, and privileges of [her] employment." 42 U.S.C. § 12112(a). Although the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), held that an employment action need not be "significant" to be actionable, at least in the Title VII context, it did not alter the requirement that an alleged employment action "must show some harm respecting an identifiable term or condition of employment." *Id*. at 354; *see also Buck v. Modine Mfg. Co*., No. 6:23-cv-00039, 2025 WL 978226, at \*9 (W.D. Va. Mar. 31, 2025) (the plaintiff is still required, under *Muldrow*, to plead facts connecting the alleged discriminatory harm to "an identifiable term or condition of employment").

Here, Plaintiff alleges that her managers met with her to address work-related errors (Doc. 1 at ¶ 21), gave her a "performance concerns document" (*id*. at ¶ 23), and notified her that she would be terminated the following month if her performance did not improve

(*id*.). Plaintiff further cites an instance where her supervisor loudly admonished her in front of another employee about failing to message her supervisor when she was leaving work early the previous day. (*Id*. at ¶ 26.)

Plaintiff fails to allege facts connecting any of the job-related criticism and performance discussions to any tangible effect on the terms and conditions of her employment, as required to plausibly plead an adverse action.[2] *See Credle v. Va. Cmty. Coll. Sys.*, No. 3:24cv233, 2025 WL 27827, at *8 (E.D. Va. Jan. 3, 2025) (letter of reprimand does not constitute adverse employment action unless the reprimand was "tethered to an adverse impact on the terms and conditions of the plaintiff's employment"); *Batchelor v. City of Wilson*, 747 F. Supp.3d 845, 860 (E.D.N.C. 2024) (the plaintiff failed to plausibly allege that an incident where a superior expressed concern about the plaintiff's job performance as a supervisor harmed an identifiable term or condition of employment); *Downer v. Prince Georges Cnty. Bd. of Educ.*, No. 21-1618-BAH, 2024 WL 3277563, at *9 (D. Md. Jul. 2, 2024) (finding that unfounded and critical statements about a plaintiff's

---

[2] The Complaint does not include a claim for failure to provide reasonable accommodations. Even if Plaintiff were to allege such a claim, the ADA does not require Truist to lower its job performance expectations to accommodate individuals with disabilities. *See* 29 C.F.R. pt. 1630 app. - 1630.2(n) (2011) ("the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards"); EEOC, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act, at VII (7.7) (1992), available at https://www.eeoc.gov/laws/guidance/technical-assistance-manual-employment-provisions-title-i-americans-disabilities-act ("An employer can hold employees with disabilities to the same standards of production/performance as other similarly situated employees without disabilities for performing essential job functions").

job performance, absent any negative employment repercussions, did not constitute adverse action).

In support of her ADA disparate treatment claim, Plaintiff also alleges she was required to take lunch breaks at a specified time and was precluded from leaving work earlier than necessary for her scheduled medical appointments. (Doc. 1 ¶¶ 27-28.) Plaintiff does not plausibly allege any facts, however, indicating that these directives, which related to early departures that Truist permitted as an accommodation for her healthcare treatment, resulted in any concrete harm to the terms and conditions of her employment. *See Couch v. City of Va. Beach*, 768 F. Supp.3d 741, 753 (E.D. Va. 2025) (concluding that the plaintiff's allegations of changed job duties, work criticism, missed meetings, unprofessional behavior, rude comments from a supervisor "fall far short of constituting adverse employment actions").

### D. Plaintiff has not alleged facts indicating she was treated less favorably than similarly situated employees outside the protected class.

Evidence "that other employees were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably" can constitute evidence that an employer's action was taken because of discrimination. *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381 (4th Cir. 2022) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)). Relevant considerations for a similarly situated inquiry include whether the plaintiff and comparator "dealt with the same supervisor," were "subject to the same standards," and "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment

13

of them for it." *Id.* (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (per curiam)).

Although Plaintiff generally alleges that she was treated differently than her co-workers when she made job-related errors, she does not specify the nature or frequency of her mistakes in comparison with her co-workers or how Truist allegedly treated others differently. In fact, Plaintiff fails to identify a single comparator who allegedly was treated more favorably than she was. Nor does she assert that any of her allegedly similarly situated co-workers were outside the ADA's protected class—i.e., that they were non-disabled. Similarly, Plaintiff alleges that others also left work early and were not required to take their lunch breaks at the same time each day, but she does not specify how often co-workers were excused early from work, the reasons for their early departures, or even whether they were outside the protected class.

Plaintiff's failure to allege facts indicating similarly situated, non-disabled employees received more favorable treatment is fatal to her disparate treatment claim. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (affirming dismissal of race discrimination claim where the plaintiff alleged he was "treated differently as a result of his race than whites," but "fail[ed] to establish a plausible basis for believing [the allegedly comparable supervisor] and Coleman were similarly situated or that race was the true basis for Coleman's termination"); *Seabrook v. Esper*, No. 5:19-CV-236-D, 2020 WL 2101014, at *3 (E.D.N.C. May 1, 2020) ("Where plaintiff offers a comparator, the plausibility of her claim depends upon whether that comparator is similarly situated").

**II. Although the Complaint contains conclusory assertions that Truist discriminated and retaliated against Plaintiff in violation of Title VII, Plaintiff makes no factual allegations to support these claims.**

**A. Plaintiff alleges no facts related to Title VII discrimination.**

Title VII prohibits discrimination based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish discrimination under Title VII by presenting direct or circumstantial evidence that her status in one of protected classes covered by the statute was a motivating factor in an adverse employment action. *Hill v. Lockheed Martin Logistics Mgmt, Inc*., 354 F.3d 277, 284 (4th Cir. 2004) (en banc), overruled in part on other grounds by *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167 (2009).

Plaintiff's Complaint contains no reference whatsoever to her race, color, religion, sex, or national origin. Nor does Plaintiff allege that she was subjected to discrimination based on any of these statutorily protected characteristics. Instead, Plaintiff alleges solely that she was subject to discrimination ***because of her disability***. (Doc. 1 ¶¶ 13, 33, 35-36.) Unlike the ADA, Title VII does not cover disability discrimination. *See Bowen v. Md. Dep't of Pub. Safety & Corr. Servs*., No RDB-17-1571, 2018 WL 1784463, at *11 (D. Md. Apr. 12, 2018). Moreover, Plaintiff's failure to allege an adverse employment action, as addressed above regarding her ADA discrimination claim, also would preclude any Title VII disparate treatment claim.

15

## B.    Plaintiff fails to assert a Title VII retaliation claim.

Title VII prohibits employers from retaliating against employees for opposing any employment practice made unlawful by the statute or participating in enforcement proceedings. 42 U.S.C. § 2000e-3(a). The elements of a *prima facie* retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The Complaint lacks even conclusory allegations indicating Plaintiff engaged in protected activity under Title VII, much less that she was subjected to an adverse action because she engaged in such activity. Instead, Plaintiff alleges only that Truist retaliated against her for "being a qualified individual with disabilities," which is akin to a claim of disability discrimination.[3] (Doc. 1 ¶ 13; *see also id*. at 35.)

Moreover, Plaintiff does not allege she was subjected to the requisite material adverse employment action. A retaliation plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). (internal quotation omitted). *Burlington Northern* "emphasized that the 'materiality' requirement was

---

[3] Plaintiff does not allege, even in a conclusory manner, that she was subjected to retaliation for engaging in protected activity under the ADA; nor does she include such a cause of action in her Complaint.

necessary to ensure that only significant harms [are] actionable." *Perkins v. Int'l Paper Cop.*, 936 F.3d 196, 213-14 (4th Cir. 2019) (quoting *Burlington Northern*, 548 U.S. at 68-70). In *Muldrow*, the Supreme Court re-affirmed that, in the retaliation context, "materially adverse" means causing "significant harm." *Muldrow*, 601 U.S. at 357-58.

Plaintiff's allegations regarding job-related reprimands and criticisms of her job performance are insufficient to plausibly allege a materially adverse retaliatory action. *See, e.g., Teeter v. Loomis Armored U.S. LLC*, No. 7:20-cv-00079, 2021 WL 6200506, at *16 (E.D.N.C. Nov. 23, 2021) (reprimands without tangible adverse consequences do not amount to actionable adverse actions); *Hinton v. Va. Union Univ.*, 185 F. Supp.3d 807, 832 (E.D. Va. 2016) ("reprimands without collateral consequences are akin to non-actionable snubbing, antipathy, and petty slights," and do not qualify as material adverse actions). Likewise, Plaintiff's allegations about the scheduling of her lunch breaks and early departures from work do not suffice. *See, e.g., Parsons v. Wynne*, 221 Fed. Appx. 197, 198-99 (4th Cir. 2007) (removal from an alternate work schedule would not have dissuaded a reasonable worker from making or supporting a charge of discrimination and therefore was not material adverse action); *Teeter*, 2021 WL 6200506, at *17 (changes to scheduled start times of the plaintiff's work shifts, without more, do not amount to material adverse actions).

17

**III. Plaintiff fails to state an actionable claim for negligent infliction of emotional distress, but instead relies solely on allegations of intentional conduct.**

To state a claim for negligent infliction of emotional distress under North Carolina law, a plaintiff must allege: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did, in fact, cause the plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Actionable negligence requires a showing that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2001).

Plaintiff fails to allege that her emotional distress resulted from any negligence on the part of Truist or any of its employees. If she had done so, that claim would be subject to dismissal based on the exclusivity provisions of the North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 91-10.1. *See Shaw v. Goodyear Tire & Rubber Co.,* 225 N.C. App. 90, 104, 737 S.E.2d 168, 178 (2013) (reversing verdict for plaintiff on negligent infliction of emotional distress claim); *see also Baldwin v. Tradesmen Int'l, Inc.,* No. 5:12-cv-00116-FL, 2013 WL 1192314, at *3-5 (E.D.N.C. Mar. 22, 2013) (following *Shaw* and granting employer's motion to dismiss negligent infliction claim); *Jones v. Wells*

18

*Fargo Co.*, 260 N.C. App. 705, 817 S.E.2d 497 (TABLE), 2018 WL 3733877, at *4 (2018) (granting motion to dismiss Jones's negligent infliction claim).

Instead, Plaintiff alleges in a conclusory manner that Defendant "intended to cause, and did cause [her] to suffer severe emotional distress" by subjecting her to "discrimination and retaliation based on her disabilities" and subjected her to disparate treatment by "deliberately treat[ing her] differently based on her disabilities." (Doc. 1 ¶¶ 35-36.) Allegations of intentional conduct, even at this early stage, are insufficient to substantiate a negligent infliction of emotional distress claim. *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 148-49, 746 S.E.2d 13, 19 (2013) ("Allegations of intentional conduct … even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of [a negligent infliction of emotional distress] claim."). Accordingly, "federal courts interpreting North Carolina law note with near uniformity that acts of discrimination . . . , because they are inherently intentional, cannot form the basis of [a negligent infliction of emotional distress] claim; such claims simply allege no negligent conduct." *Redman v. Am. Airlines, Inc*., 3:22-cv-00515-RJC-DCK, 2023 WL 4768696, at *3 and n. 1 (W.D.N.C. July 26, 2023) (citations omitted); *see also Wilson v. Gaston Cnty.*, No. 3:13-cv-58-GCM, 2013 WL 1891276, at *4-5 (W.D.N.C. May 6, 2013); *Baldwin*, 2013 WL 1192314, at *6.

## IV.     Plaintiff does not plausibly allege an intentional infliction of emotional distress claim.

Under North Carolina law, to state a proper claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant engaged in: "(1) extreme and

outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress in another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Conduct is considered extreme and outrageous only when it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (quoting Restatement (Second) of Torts, § 46, Comment d). The initial determination of whether conduct is extreme and outrageous is a question of law. *Id.*

North Carolina courts are reluctant to find intentional infliction of emotional distress claims actionable within an employment claim. *Haburjak v. Prudential–Bache Sec. Inc.*, 759 F. Supp. 293, 302–03 (W.D.N.C. 1991). Accordingly, "Stating a viable claim of intentional infliction of emotional distress under North Carolina law for conduct arising in the workplace is very difficult." *Allen v. City of Raleigh*, No. 5:13-cv-522-D, 2014 WL 840735, at *7 (E.D.N.C. Mar. 4, 2014).

Under these rigorous standards, this Court and others have found intentional infliction of emotional distress claims actionable only where the alleged workplace conduct has been "extremely egregious," and involved behavior such as "sexual advances, obscene languages, and inappropriate touching." *Miller v. Gerber Collision (Northeast), Inc*., No. 4:19-CV-18-D, 2019 WL 2527105, at *3 (E.D.N.C. June 19, 2019) (citations omitted). *See, e.g., Hogan v. Forsyth Country Club Co*., 79 N.C. App. 483, 490, 340 S.E.2d 116, 121 (1986) (denying summary judgment where the plaintiff alleged the defendant made

sexually suggestive remarks to her while she was working, coaxed her to have sex with him and said he wanted to "take" her, brushed up against her, rubbed his penis against her buttocks, touched her buttocks with his hands, and when she rejected his advances, screamed profane names at her, threatened her with bodily injury, and advanced toward her with a knife and slammed it on a table in front of her); *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 181, 527 S.E.2d 712, 715, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000) (defendant "physically assaulted plaintiff, ... [demanding] sexual relations ... [and] began masturbating, ultimately ejaculating upon plaintiffs clothing").

      Here, Plaintiff does not allege she was subjected to any sort of inappropriate touching, profanity, threats of violence, or similar misconduct, but instead premises her intentional infliction of emotional distress claim on allegations of disability discrimination and retaliation. (Doc. 1 ¶¶ 35-36.) Acts of unlawful discrimination, however, are not necessarily "extreme and outrageous" under North Carolina law. *See Lemay v. Bridgestone Bandag, LLC*, No. 5:11-CV-723-BO, 2012 WL 3524838, at *3 (E.D.N.C. Aug. 14, 2012) (refusal to accommodate the plaintiff's disability not extreme and outrageous); *Bratcher v. Pharm Prod. Dev't, Inc.*, 545 F. Supp.2d 533, 545 (E.D.N.C. 2008) (the plaintiff alleged that the defendant "failed to promote [plaintiff] while promoting or hiring less qualified younger persons, refused her requests for additional training, failed to place her on mentoring status, retaliated against her for complaining about alleged race discrimination, and terminated her employment due to her age, race, and sex); *Atkins v. USF Dugan, Inc.*, 106 F. Supp.2d 799, 810–11 (M.D.N.C.1999) (conduct not extreme or outrageous when

employee was told he was "too old and sick" to handle his job and was allegedly terminated in violation of federal and state discrimination laws); *Buser v. S. Food Serv., Inc.*, 73 F. Supp.2d 556, 573-74 (M.D.N.C. 1999) (not extreme and outrageous conduct where the plaintiff alleged that the defendants demanded that she return to work although she had taken an approved leave of absence and terminated her in violation of federal law, although they knew or should have known of plaintiff's and her husband's poor medical conditions and financial difficulties).

Taken as a whole, Plaintiff's allegations describe the sort of intemperate conduct that does not rise to the level of "extreme and outrageous" as a matter of law. Courts have found allegations of far more egregious conduct insufficient to support an intentional infliction of emotional distress claim. *See, e.g., Payne v. Whole Foods Mkt. Grp., Inc.*, 812 F. Supp.2d 705, 708 (E.D.N.C. 2011) (the plaintiff allegedly was subjected to "ostracism, targeted criticism, false and anonymous accusation, and periodic intentional efforts to overwhelm him with work," and his co-workers played "indecent music," engaged in "indecent conversation," were "mean" to him, and withheld assistance); *Bendross v. Town of Huntersville*, 159 N.C. App. 228, 582 S.E.2d 726 (TABLE), 2003 WL 21649354, at *4-5 (2003) (the defendant strained the plaintiff's working relations with supervisors, subjected plaintiff to three internal investigations, imposed disciplinary action, and slammed chair against wall during conference with the plaintiff); *Guthrie*, 152 N.C. App.at 23-24, 567 S.E.2d at 410 (co-worker touched or rubbed the plaintiff's neck and shoulders, placed a lampshade on her head when she fell asleep at her desk, threw potting soil and

water on her while she was planting flowers at work, remarked that he'd "always wanted to see [her] in a wet T shirt, and placed small objects between the legs of a "naked man" statuette that the plaintiff displayed on her windowsill at work and asked "how she liked it" with the additions); *Hogan*, 79 N.C. App. at 490-91, 340 S.E.2d at 121 (the defendant failed to grant the plaintiff maternity leave, made her carry heavy objects when she was pregnant, refused to allow her to leave work to go to the hospital, and then terminated her employment when she did so).

**V.     Plaintiff fails to plausibly allege negligent supervision and retention.**

North Carolina law requires a plaintiff alleging negligent retention or supervision to show: (1) a specific tortious act by an employee, (2) incompetency of an employee by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred, (3) the employer's actual or constructive notice of an employee's incompetency or unfitness, and (4) injury resulting from the employee's incompetency or unfitness. *Medlin v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990). In other words, a claim for negligent retention or supervision requires allegations "that an employee of the employer 'committed a tortious act resulting in [the plaintiff's] injuries*." Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 774 (4th Cir. 1997) (quoting *Waddle v. Sparks*, 331 N.C. 73, 87, 414 S.E.2d 22 (1992)).

Here, Plaintiff fails to specify which employee allegedly engaged in a tortious act (Doc. 1 ¶ 34), much less premise her negligent retention and supervision claim on a viable common law tort. *Jackson v. FKI Logistex*, 608 F. Supp.2d 705, 708-09 (E.D.N.C. 2009)

("[T]he Fourth Circuit interpret[s] North Carolina law to require a common-law tort to underly a negligent retention and supervision claim."). Nor does Plaintiff plausibly allege any facts indicating the incompetency or unfitness of any employee or showing that Truist had actual or constructive notice of such incompetency or unfitness.

Violation of a federal statute, such as ADA and Title VII infractions alleged here, are not actionable tort under North Carolina law and therefore cannot serve as the underlying "tortious act" necessary for a negligent retention or supervision claim. *McLean v. Patten Cmties, Inc*., 332 F.3d 714, 719 (4th Cir. 2003). Based on this Fourth Circuit precedent, this Court and others have dismissed negligent retention and supervision claims that are based on alleged violations of federal anti-discrimination laws. *See Chestnutt v. Town of Ahoskie*, *N.C.*, No. 2:21-CV-00004-BO, 2021 WL 6125892, at *6 (E.D.N.C. Aug. 26, 2021); *Barrow v. Branch Banking & Trust Co*., No. 3:16-cv-00675-RJC-DCK, 2017 WL 4124180, at *5 (W.D.N.C. Sept. 18, 2017); *Clausell v. Bayer Corp*., No. 5:15-CV-50-BO, 2015 WL 5146704, at *4 (E.D.N.C. Sept. 1, 2015); *Jackson*, 608 F. Supp.2d at 708-09.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that Plaintiff's claims be dismissed with prejudice, in their entirety, for failure to state a claim upon which relief may be granted.

This the 20th day of June 2025.

/s/ *Jill S. Stricklin*
Jill S. Stricklin
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
/s/ *Alexis M. Holloway*
Alexis M. Holloway
N.C. State Bar No. 61775
Email: amholloway@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
One West 4th Street, Ste 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

I hereby certify and attest that this **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT** contains 6,239 words, including headings, footnotes, citations and quotations, but excluding the case caption, signature blocks, required certificates, and attachments, exhibits, affidavits, and other addenda pursuant to Local Rule 7.2(f)(1), based upon the word count generated by the word processing software used to prepare the document, and therefore complies with Local Rule 7.2(f)(3)(A).

This the 20th day of June 2025.

*/s/ Jill S. Stricklin*
**Jill S. Stricklin**
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
One West 4th Street, Ste 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*

26

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Lisa Walker (lisa@lisawalkerlaw.com).

This the 20th day of June 2025.

*/s/ Jill S. Stricklin*
**Jill S. Stricklin**
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
One West 4th Street, Ste 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*

27