IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:25-cv-00268-FL

| | |
|---|---|
| DEBRA JONES, individually, <br>     Plaintiff, <br><br> vs. <br><br> TRUIST BANK, <br> a North Carolina corporation, <br>     Defendant. | **FIRST AMENDED <br> COMPLAINT <br> JURY TRIAL DEMAND** |

NOW COMES Plaintiff, Debra Jones, by and through her undersigned counsel, complains of Defendant Truist Bank as follows:

1. Plaintiff asserts claims arising under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq*. This court has jurisdiction over these claims under 28 U.S.C. § 1331.

2. This Court is the proper venue for this action under 28 U.S.C. § 1391.

3. Plaintiff Debra Jones, (hereinafter "Plaintiff" or "Jones"), is a qualified individual with disabilities as defined by Title I of the ADA.

4. Plaintiff is a citizen of the United States and the State of North Carolina and presently resides in Nash County, North Carolina.

5. Plaintiff was, at all times material hereto, a citizen of the State of North Carolina, residing in Nash County, North Carolina.

6. The unlawful practices alleged were committed within the State of North Carolina, specifically in Nash County, North Carolina.

7. At all times alleged herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f). Plaintiff further contends that at all times alleged herein, Defendant Truist Bank (hereinafter "Defendant" or "Truist") was an "employer" within the meaning of 42 U.S.C. § 2000e(f).

8. Upon information and belief, Defendant is a corporation qualified to do business in Nash County, and the State of North Carolina; and has its principal place of business in Charlotte, North Carolina.

9. Defendant is an employer engaged in an industry that affects commerce and employs more than fifteen (15) employees. All conditions precedent to jurisdiction have occurred or been complied with, as the plaintiff timely submitted a complaint of disability discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 433-2025-01526. On or about February 21, 2025, the EEOC issued the plaintiff a "Notice of Right to Sue."

10. Plaintiff contends that the constitutional and statutory violations alleged herein arose from Defendant's official policy or custom of engaging in, condoning or failing to address issues of discrimination and retaliation within its workplace.

11. At all times material hereto, Plaintiff began her employment in approximately April 2024 as a Relationship Banker in Rocky Mount, North Carolina. At all times relevant to the matters complained of herein, Plaintiff was qualified and which Plaintiff was able to perform

the essential functions of the Relationship Banker position, with or without reasonable accommodation.

12.     Plaintiff contends that she was employed as a Relationship Banker, and Plaintiff worked full-time, at least forty (40) hours per week, Monday through Friday.

13.     Plaintiff contends that she was subjected to discrimination and retaliation based on her being a qualified individual with disabilities. Plaintiff has a diagnosis of major depressive disorder, generalized anxiety disorder, and autoimmune disorder vitiligo. Defendant was aware of Plaintiff's disabilities.

14.     Plaintiff further contends that in June 2024 during her last week of her new hire training, Defendant's manager, Matthew Korr (hereinafter "Korr") placed a Chucky doll – the doll that kills people, in Plaintiff's office chair, which interfered with Plaintiff's training. Korr's actions caused harm to Plaintiff's disabilities, worsened her medical condition and caused Plaintiff to seek immediate medical attention. Plaintiff further contends that Korr laughed when he saw Plaintiff's reaction to the Chucky doll.

15.     Plaintiff contends that Korr was aware of her disabilities prior to the June 2024 incident involving the Chucky doll. Plaintiff further contends that Korr was aware of her fear of dolls and how her fear of dolls negatively affected her disabilities as Plaintiff had shared this with Korr when he had invited Plaintiff to his home for a team cookout.

16.     Plaintiff further contends that she was treated by her medical provider on the same day of the Chucky doll incident and was placed on a medical leave to treat her disabilities. Plaintiff's medical provider placed her on a medical leave for eight (8) weeks to treat Plaintiff's severe

emotional distress as a result of the Chucky doll incident. Plaintiff further contends that she was newly diagnosed with post-traumatic stress disorder ("PTSD") after the Chucky doll incident.

17. Plaintiff contends that she was released to return to work on August 15, 2024, by her medical provider and Plaintiff requested a reasonable accommodation based on her disabilities to leave work at 3:00 p.m., three (3) times per week for treatment of her autoimmune disorder. Plaintiff's treatment was for flare ups that started as a result of the Chucky doll incident.

18. Upon information and belief, Plaintiff was the only employee within her work team that had disabilities that required observable reasonable accommodations.

19. Defendant was aware of Plaintiff's disabilities and based on the reasonable accommodation request submitted by Plaintiff's medical provider, Defendant approved Plaintiff's reasonable accommodation request.

20. Upon return to work, Plaintiff was assigned a new manager, Jennifer Briley ("Briley"). Briley immediately informed Plaintiff that she was aware of the Chucky doll incident and placed Plaintiff in a different office.

21. Plaintiff contends that she did not repeat the new hire training after returning to work but participated in hands on experience with the head teller on teller training. But for the Chucky doll incident, Plaintiff would have completed the initial new hire training.

22. Plaintiff contends that on or about November 15, 2024, Plaintiff discovered a fraudulent check. After the discovery, Briley made a joke in the presence of Plaintiff and Briley's team that Plaintiff was always fraudulent vigilant. Briley and the team laughed at the joke even though Plaintiff was performing her job stisfactorily manner when she made the fraudulent discovery.

4

23. Plaintiff further contends that on or about November 15, 2024, Briley and Briley's manager, Tracy Wood ("Wood") requested to meet with Plaintiff to address mistakes that Plaintiff was allegedly making. In that meeting, Plaintiff told Briley that Briley's joke about Plaintiff being fraudulent vigilant was offensive.

24. Plaintiff was performing her job satisfactorily and had not received any unsatisfactory reviews until November 19, 2024. Plaintiff contends that Plaintiff and her coworkers alike were subjected to making some mistakes but Plaintiff was treated differently than her coworkers when she made mistakes. Plaintiff contends that her coworkers, Yasmin Martinez ("Martinez") and Ebony (last name unknown), also made mistakes but were treated differently than Plaintiff. Plaintiff contends that she was subjected to disparate treatment based on her disabilities.

25. Upon information and belief, none of Plaintiff's coworkers, none of whom suffered disabilities or were granted reasonable accommodations, were subjected to similar disciplinary scrutiny and disciplinary actions as the Plaintiff.

26. Plaintiff contends that on or about November 19, 2024, Briley presented Plaintiff with a performance concerns document.

27. Plaintiff contends that on November 19, 2024, Plaintiff sent an email to H.R. White, Defendant's District Manager, regarding the meeting with Briley and Wood when she was presented with the performance concerns document. Plaintiff notified White that she believed that she was treated differently than her coworkers by Briley based on her disabilities and that Briley would discuss Plaintiff's approved reasonable accommodations with the team. White referred Plaintiff to Lucinda Austin, a Human Resources Manager, who met with Plaintiff

regarding her concerns but Plaintiff continued to be subjected to Briley's discrimination and retaliation.

28. The Defendant was negligent in the handling and investigation of Plaintiff's complaint, in not properly dealing with the discrimination and retaliation of its managers, and in not offering an appropriate remedy to Plaintiff in the manner described herein.

29. Based upon information and belief, Briley was out of work on January 28, 2025.

30. Plaintiff contends that after Briley returned to work on January 29, 2025, Briley approached Plaintiff in the teller line in the presence of a coworker. Briley spoke to Plaintiff in an aggressive loud tone stating that Plaintiff should have messaged Briley yesterday that Plaintiff was leaving work early. Plaintiff had notified Defendant's lead person that she was leaving early on January 28, 2025, to attend a doctor's appointment based on her approved reasonable accommodation.

31. Plaintiff contends that on or about January 29, 2025, Briley came into Plaintiff's office and stated that Plaintiff would have to take her lunch break every day at the same time, that Plaintiff could not leave earlier than her scheduled appointment time for her approved reasonable accommodation and that because Defendant had not received Plaintiff's updated documents, Plaintiff would now be required to leave work at 4:00 p.m., instead of 3:00 p.m. Plaintiff contends that she would take her lunch break at 2:00 p.m., on days that she had her treatments at 3:00 p.m. Defendant stopped Plaintiff's approved reasonable accommodation.

32. Based upon information and belief, Defendant allowed Plaintiff's coworkers, including but not limited to, Martinez, to leave work early for personal reasons; none of these coworkers

6

were leaving work early based on reasonable accommodations and none of whom suffered disabilities. Plaintiff further contends that Plaintiff's coworkers were not required to take their lunch breaks at the same time every day. Plaintiff contends that she was subjected to disparate treatment based on her disabilities.

33. Plaintiff further contends that in the meeting with Briley on January 29, 2025, Plaintiff discussed the incident from the teller line when Briley spoke to Plaintiff in an aggressive loud tone in the presence of a coworker. Plaintiff contends that Briley became angry, told Plaintiff that she would receive another write up and slammed Plaintiff's office door as she walked out of Plaintiff's office.

34. Plaintiff contends that after the meeting with Briley on January 29, 2025, Wood came into Plaintiff's office thereafter and told Plaintiff that Plaintiff's approved reasonable accommodation to leave work at 3:00 p.m., was affecting Plaintiff's coworkers because they also needed time off. Wood further stated to Plaintiff that Wood did not believe this job was the right fit for Plaintiff and that Plaintiff cannot keep using her anxiety and emotional problems as an excuse. Wood gave Plaintiff a document and notified Plaintiff that she would be terminated next month if she did not improve.

35. Plaintiff contends that she suffered several panic attacks as a result of the meetings with Briley and Wood on January 29, 2025, and Plaintiff's panic attacks affect her ability to breathe. Plaintiff then met with her medical provider and was taken out of work for treatment of her disabilities. Plaintiff was treated for PTSD as her interactions with Briley and Wood had

triggered symptoms of her PTSD diagnosis. Plaintiff was further treated for the panic attacks she suffered as panic attacks are a symptom of Plaintiff's anxiety diagnosis.

36. Plaintiff contends that she suffered severe emotional distress as a result of Briley and Wood's conduct and Plaintiff was unable to return to work after January 29, 2025, due to her ongoing medical treatment for PTSD, anxiety and depression.

37. As described herein, Defendant discriminated against and retaliated against Plaintiff on an ongoing basis from the time Plaintiff returned to work on August 15, 2024 with a reasonable accommodation request and this ongoing discrimination and retaliation evidenced a pattern of antagonism and/or recurring retaliatory animus through the time Plaintiff's medical provider removed her from work on January 29, 2025.

38. Plaintiff contends that she was notified on or about March 12, 2025 by her coworker, based on a directive from Briley, that Plaintiff had to come get her personal belongings from Defendant. On or about April 14, 2025, Wood notified Plaintiff that Defendant would hold her belongings for forty-five (45) days.

39. Plaintiff contends that she was routinely subjected to discrimination and retaliation based on her disabilities. Plaintiff contends that she is a member of a protected class and was discriminated against and retaliated against by her supervisor, Jennifer Briley and Briley's supervisor, Tracy Wood, based on her disabilities. Plaintiff further contends that the employer knew or should have known of the discrimination and retaliation and failed to take prompt effective remedial action.

40. Plaintiff contends that all supervisors, employees and coworkers were, at all times

herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondeat superior, the Defendant is vicariously liable for acts herein alleged against those supervisors, employees and coworkers. Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment, Plaintiff alleges that the employer remains liable for its negligent supervision and retention of those employees.

41. Plaintiff contends that she was subjected to discrimination and retaliation based on her disabilities and that Defendant intended to cause, and did cause, Plaintiff to suffer severe emotional distress. Plaintiff further contends that Defendant had knowledge that Plaintiff was a qualified individual with disabilities.

42. Plaintiff contends that she was subjected to disparate treatment when she was deliberately treated differently based on her disabilities and that Defendant intended to cause, and did cause, Plaintiff to suffer severe emotional distress. Plaintiff further contends that Defendant had knowledge that Plaintiff was a qualified individual with disabilities.

43. As a result of the aforementioned acts, Plaintiff contends that she has suffered pecuniary and non-pecuniary losses, lost past and future wages, job benefits, and has suffered and will continue to suffer emotional pain and suffering, inconvenience, embarrassment, mental anguish, and other non- pecuniary losses in an amount to be determined at trial.

## COUNT ONE
## ADA Discrimination

44. Plaintiff incorporates by reference and re-alleges the allegations in the preceding

9

Case 5:25-cv-00268-FL     Document 10     Filed 07/11/25     Page 9 of 18

paragraphs as though fully set forth herein.

45. At all times relevant to the matters complained of herein, Defendant was a covered employer within the meaning of the ADA.

46. At all times relevant to the matters complained of herein, Plaintiff was and is a person with disabilities, within the meaning of the ADA.

47. At all times relevant to the matters complained of herein, Plaintiff had and has physical and mental impairments that substantially affected one or more major life activities, including but not limited to, breathing, learning, concentrating, sleeping, and working. or was regarded by Defendant as a person who suffered from physical and mental impairments that substantially affected one or more major life activities.

48. At all times relevant to the matters complained of herein, to the extent that Plaintiff had disabilities within the meaning of the ADA, Defendant had notice of those disabilities.

49. At all times relevant to the matters complained of herein, Plaintiff was a qualified person with disabilities, within the meaning of the ADA.

50. All times relevant to the matters complained of herein, Plaintiff could perform the essential functions of her position, with or without reasonable accommodations.

51. At all times relevant to the matters complained of herein, there were available positions with the Defendant for which Plaintiff was qualified and which Plaintiff was able to perform, with or without reasonable accommodation.

52. At all times relevant to the matters complained of herein, Plaintiff was performing the duties of her position satisfactorily.

53. To the extent that, at any time relevant to the matters complained of herein, Plaintiff required an accommodation to perform an essential function of her position, reasonable and effective accommodation(s) were available that would not be an undue burden on the Defendant.

54. Defendant did not suffer an undue burden by providing Plaintiff with reasonable accommodation(s) that were available and effective.

55. On or about January 29, 2025, Defendant notified Plaintiff that her reasonable accommodation was being denied and that Plaintiff's employment was in jeopardy due to her disabilities.

56. Defendant's actions, as alleged herein, violated Plaintiff's rights under the ADA to be free from discrimination because of her disabilities.

57. Defendant's actions, as alleged herein, were intentional and committed with malice or reckless indifference to Plaintiff's federally protected rights.

58. Plaintiff claims damages for Defendant's discriminatory acts that occurred during all relevant times hereto.

59. Plaintiff has been injured as a direct and proximate result of Defendant's actions, as alleged herein, and is entitled to recover from Defendant her back wages, reinstatement or front wages, compensatory damages, in an amount to be proved at trial, together with interest thereon at the prevailing rate.

## COUNT TWO
### ADA Retaliation

60. Plaintiff incorporates by reference and re-alleges the allegations in the preceding

11

paragraphs as though fully set forth herein.

61. At numerous times as described herein, Plaintiff engaged in protected activity when she reasonably opposed what she reasonably believed to be Defendant's unlawful violation of rights protected under the ADA, as alleged herein.

62. At numerous times as described herein, Plaintiff engaged in protected activity when she requested reasonable accommodations under the ADA in August 2024 and complained to Defendant's Human Resources on November 19, 2024 that she was being discriminated against due to her disabilities, as alleged herein.

63. Defendant was aware that Plaintiff had engaged in said protected activities.

64. Defendant's actions as described herein, made without legitimate business reason and including by way of example on not limitation, denying Plaintiff's previously approved reasonable accommodation, pretextually disciplining her, and threatening to terminate her based on her disabilities, were in retaliation for Plaintiff having engaged in said protected activities.

65. As described herein, Defendant discriminated and retaliated against Plaintiff on an ongoing basis from the time Plaintiff opposed Defendant's practice made unlawful by the ADA and this ongoing discrimination and retaliation evidenced a pattern of antagonism and/or recurring retaliatory animus through January 29, 2025

66. Defendant's actions, as alleged herein, were intentional and committed with malice or reckless indifference to Plaintiff's federally protected rights.

67. Plaintiff claims damages for Defendant's retaliatory acts that occurred on or after August 15, 2024, in November 2024 and January 29, 2025.

68. Plaintiff has been injured as a direct and proximate result of Defendant's retaliation, as alleged herein, and is entitled to her back wages, reinstatement or front wages, and compensatory in an amount to be established at trial, together with interest thereon at the prevailing rate.

## COUNT THREE
### Intentional Infliction of Emotional Distress

69. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

70. The Defendant, through the conduct of its managers, engaged in extreme and outrageous conduct. This conduct, when taken as a whole, exceeded all bounds usually accepted by decent society, and included, by way of example and not limitation: a) placing a Chucky doll in Plaintiff's chair knowing that Plaintiff was afraid of dolls; b) laughing at Plaintiff's reaction to the Chucky doll incident; c) Defendant's manager notifying Plaintiff on her return to work date that she knew about the Chucky doll incident; d) ridiculing Plaintiff in the presence of her coworkers when Plaintiff had made a fraudulent discovery; e) meeting with Plaintiff to confront her about mistakes that she and her coworkers alike were subjected to making but Plaintiff was treated differently than her coworkers when she made mistakes; f) when Defendant knew Plaintiff suffered from PTSD as a result of the Chucky doll incident, which required mental health treatment for Plaintiff; g) when Defendant stopped Plaintiff's approved reasonable accommodation for treatment as a result of the Chucky doll incident; h) when Defendant told Plaintiff that she cannot keep using her anxiety and emotional problems as an excuse; and i)

when Defendant threatened to terminate Plaintiff due to her disabilities.

71. Defendant's conduct was either intended to cause or was recklessly indifferent to the likelihood that it would cause severe mental and emotional distress to Plaintiff.

72. Defendant's conduct in fact caused severe mental and emotional distress to Plaintiff, which included, by way of example and not limitation, fear, distress, anxiety, mental anguish, embarrassment, extreme stress, extreme concern about her well being and medically diagnosed depression, anxiety and PTSD for which the Plaintiff is still being treated.

73. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer severe mental and emotional distress, medically diagnosed depression, emotional pain, suffering, inconvenience, embarrassment, mental anguish, anxiety and other non-pecuniary losses in an amount to be determined at trial.

## COUNT FOUR
### Negligent Infliction of Emotional Distress

74. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

75. This count is pled in the alternative to Count Three.

76. The Defendant was negligent when Korr placed a Chucky doll in Plaintiff's office chair knowing that the Plaintiff had a fear of dolls.

77. The Defendant was negligent in the handling and investigation of Plaintiff's discrimination complaint, in not properly dealing with the discrimination and retaliation of its managers, and in not offering an appropriate remedy to Plaintiff, in the manner described herein.

78. Defendant knew, or should have known, that it was reasonably foreseeable that said negligent acts and/or omissions would likely result in severe emotional distress to the Plaintiff.

79. Defendant's negligence in fact caused severe emotional distress to Plaintiff, which included, by way of example and not limitation, fear, distress, anxiety, mental anguish, embarrassment, extreme stress, extreme concern about her well being and medically diagnosed depression, PTSD and anxiety, for which the Plaintiff is still being treated.

80. Defendant's negligence was a proximate cause of Plaintiff's severe emotional distress.

81. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer severe mental and emotional distress, emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

## COUNT FIVE
### Negligent Supervision and Retention

82. Plaintiff incorporates by reference and re-alleges the allegations in preceding paragraphs as though fully set forth herein.

83. The Defendant failed to exercise reasonable care in supervising or retaining Plaintiff's managers, not properly dealing with the discrimination and retaliation of its managers, and in not offering an appropriate remedy to Plaintiff, in the manner described herein.

84. Defendant knew, or should have known, of Korr's incompetence when he placed a Chucky doll in Plaintiff's chair when he was aware of her fear of dolls, and that Korr's incompetence was a direct cause of Plaintiff's injuries of severe emotional distress.

85. Defendant knew, or should have known, of Briley's incompetence when Briley notified

Plaintiff on her first day of work after being on a leave that she was aware of the Chucky doll incident and when Briley stopped Plaintiff's approved reasonable accommodation; and that it was reasonably foreseeable that Briley would discriminate and retaliate against Plaintiff.

86. Defendant knew, or should have known, of Wood's incompetence when Wood notified Plaintiff that her approved reasonable accommodation to leave work at 3:00 p.m., was affecting Plaintiff's coworkers because they also needed time off; that this job was not the right fit for Plaintiff; that Plaintiff cannot keep using her anxiety and emotional problems as an excuse; and that Wood notified Plaintiff that she would be terminated next month if she did not improve.

87. Defendant knew, or should have known of Briley and Wood's incompetence as Plaintiff had complained about disability discrimination to Defendant on November 19, 2024.

88. Defendant knew, or should have known of Briley and Wood's incompetence, and Defendant's failure to address it, was a direct cause of the Plaintiff's injuries of severe emotional distress.

89. Defendant's actions in fact caused severe emotional distress to Plaintiff, which included, by way of example and not limitation, fear, distress, anxiety, mental anguish, embarrassment, extreme stress, extreme concern about her well being and medically diagnosed depression, PTSD and anxiety, for which the Plaintiff is still being treated.

90. Defendant's actions were a proximate cause of Plaintiff's severe emotional distress.

91. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer severe mental and emotional distress, emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

**WHEREFORE, Plaintiff prays the Court that it:**

1. Award Plaintiff compensatory damages for pecuniary losses and non-pecuniary losses, together with attorney's fees and the costs and disbursements of this action;

2. Award Plaintiff compensatory damages in an amount that would fully compensate the Plaintiff for the humiliation, embarrassment, emotional distress and mental anguish caused by Defendant's violation of the law;

3. Award Plaintiff backpay with pre-judgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

4. Grant Plaintiff a trial by jury on all issues of facts; and

5. Grant such other and further relief as this court may deem just and proper.

This the 11th day of July, 2025.

        LISA WALKER, ATTORNEY AT LAW PLLC

        BY: __/s/Lisa Walker____
            Lisa Walker
            N.C. Bar #47809
            P.O. Box 1473
            Knightdale, NC  27545
            Telephone:   (919) 390-1316
            Facsimile:    (919) 746-7845
            Email: lisa@lisawalkerlaw.com
            *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of July, 2025, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of filing to the following Defendants' counsel of record:

>Jill S. Stricklin
>N.C. State Bar No. 20145
>Email: jstricklin@constangy.com
>Alexis M. Holloway
>N.C. State Bar No. 61775
>Email: amholloway@constangy.com
>CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
>One West 4th Street, Ste 850
>Winston-Salem, NC 27101
>Telephone: (336) 721-1001
>Facsimile: (336) 748-9112
>*Attorneys for Defendant*

                               /s/Lisa Walker
                               LISA WALKER
                               *Attorney for Plaintiff*