IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO. 5:25-cv-00268-FL

| | |
|---|---|
| DEBRA JONES, individually,<br>   Plaintiff,<br><br>vs.<br><br><br>TRUIST BANK,<br>a North Carolina corporation,<br>   Defendant. | <br><br><br><br><br>_Plaintiff's Memorandum in<br>Opposition to Defendant's<br>Motion to Dismiss_ |

_____

NOW COMES Plaintiff Debra Jones, by and through undersigned counsel, and pursuant to Local Rules 7.1(e) and 7.2(a), E.D.N.C., files this response in opposition to Defendant's Motion to Dismiss (Doc. 9) for the reasons set forth below.

## STATEMENT OF FACTS

Plaintiff began her employment in approximately April 2024 as a Relationship Banker in Rocky Mount, North Carolina. (Complaint ¶ 11). Based upon information and belief, Plaintiff was performing her job satisfactorily. Plaintiff contends that Plaintiff and her coworkers alike were subjected to making some mistakes but Plaintiff was treated differently than her coworkers when she made mistakes. Plaintiff contends that she was subjected to disparate treatment based on her disabilities. (Complaint ¶ 22).

In June 2024 during her last week of her new hire training, Defendant's manager, Matthew Korr (hereinafter "Korr") placed a Chucky doll – the doll that kills people, in

Plaintiff's office chair, which interfered with Plaintiff's training. Korr's actions caused harm to Plaintiff's disabilities, worsened her medical condition and caused Plaintiff to seek immediate medical attention. Plaintiff further contends that Korr laughed when he saw Plaintiff's reaction to the Chucky doll. (Complaint ¶ 14). Korr was aware of her disabilities prior to the June 2024 incident involving the Chucky doll. Plaintiff further contends that Korr was aware of her fear of dolls and how her fear of dolls negatively affected her disabilities as Plaintiff had shared this with Korr when he had invited Plaintiff to his home for a team cookout. (Complaint ¶15). Plaintiff was treated by her medical provider on the same day of the Chucky doll incident and was placed on a medical leave to treat her disabilities. Plaintiff's medical provider placed her on a medical leave for eight (8) weeks. Plaintiff further contends that she was newly diagnosed with post-traumatic stress disorder ("PTSD") after the Chucky doll incident. (Complaint ¶ 16). Plaintiff was released to return to work on August 15, 2024, with an approved reasonable accommodation to leave work at 3:00 p.m., three (3) times per week for treatment of her autoimmune disorder. Plaintiff's treatment was for flare ups that started as a result of the Chucky doll incident. (Complaint ¶ 17).

      Upon return to work, Plaintiff was assigned a new manager, Jennifer Briley ("Briley"). Briley immediately informed Plaintiff that she was aware of the Chucky doll incident and placed Plaintiff in a different office. (Complaint ¶ 18). Plaintiff contends that she did not repeat the new hire training after returning to work but participated in hands on experience with the head teller on teller training. (Complaint ¶ 19). Plaintiff contends that on or about November 15, 2024, Plaintiff discovered a fraudulent check. After the discovery, Briley made a joke in the

presence of Plaintiff and Briley's team that Plaintiff was always fraudulent vigilant. Briley and the team laughed at the joke even though Plaintiff was doing her job when she made the fraudulent discovery. (Complaint ¶ 20). Plaintiff further contends that on or about November 15, 2024, Briley and Briley's manager, Tracy Wood ("Wood") requested to meet with Plaintiff to address mistakes that Plaintiff was allegedly making. In that meeting, Plaintiff told Briley that Briley's joke about Plaintiff being fraudulent vigilant was offensive. (Complaint ¶ 21). Plaintiff contends that on or about November 19, 2024, Briley presented Plaintiff with a performance concerns document. (Complaint ¶ 23). Plaintiff contends that on November 19, 2024, Plaintiff sent an email to H.R. White, Defendant's District Manager, regarding the meeting with Briley and Wood when she was presented with the performance concerns document. Plaintiff notified White that she believed that she was treated differently than her coworkers by Briley based on her disabilities and that Briley would discuss Plaintiff's approved reasonable accommodations with the team. White referred Plaintiff to Lucinda Austin, a Human Resources Manager, who met with Plaintiff regarding her concerns but Plaintiff continued to be subjected to Briley's discrimination and retaliation. (Complaint ¶ 24). Based upon information and belief, Briley was out of work on January 28, 2025. (Complaint ¶ 25). Plaintiff contends that after Briley returned to work on January 29, 2025, Briley approached Plaintiff in the teller line in the presence of a coworker. Briley spoke to Plaintiff in an aggressive loud tone stating that Plaintiff should have messaged Briley yesterday that Plaintiff was leaving work early. Plaintiff had notified Defendant's lead person that she was leaving early on January 28, 2025, to attend a doctor's appointment based on her approved reasonable accommodation. (Complaint ¶

26). Plaintiff contends that on or about January 29, 2025, Briley came into Plaintiff's office and stated that Plaintiff would have to take her lunch break every day at the same time, that Plaintiff could not leave earlier than her scheduled appointment time for her approved reasonable accommodation and that because Defendant had not received Plaintiff's updated documents, Plaintiff would now be required to leave work at 4:00 p.m., instead of 3:00 p.m. Plaintiff contends that she would take her lunch break at 2:00 p.m., on days that she had her treatments at 3:00 p.m. (Complaint ¶ 27). Based upon information and belief, Defendant allowed Plaintiff's coworkers to leave work early and Plaintiff's coworkers were not required to take their lunch breaks at the same time every day. Plaintiff contends that she was subjected to disparate treatment based on her disabilities. (Complaint ¶ 28). Plaintiff further contends that in the meeting with Briley on January 29, 2025, Plaintiff discussed the incident from the teller line when Briley spoke to Plaintiff in an aggressive loud tone in the presence of a coworker. Plaintiff contends that Briley became angry, told Plaintiff that she would receive another write up and slammed Plaintiff's office door as she walked out of Plaintiff's office. (Complaint ¶ 29). Plaintiff contends that after the meeting with Briley on January 29, 2025, Wood came into Plaintiff's office thereafter and told Plaintiff that Plaintiff's approved reasonable accommodation to leave work at 3:00 p.m., was affecting Plaintiff's coworkers because they also needed time off. Wood further stated to Plaintiff that Wood did not believe this job was the right fit for Plaintiff and that Plaintiff cannot keep using her anxiety and emotional problems as an excuse. Wood gave Plaintiff a document and notified Plaintiff that she would be terminated next month if she did not improve. (Complaint ¶ 30). Plaintiff contends that she suffered

4

several panic attacks as a result of the meetings with Briley and Wood on January 29, 2025. Plaintiff then met with her medical provider and was taken out of work for treatment of her disabilities. (Complaint ¶ 31).

Defendant is an employer engaged in an industry that affects commerce and employs more than fifteen (15) employees. All conditions precedent to jurisdiction have occurred or been complied with, as the plaintiff timely submitted a complaint of disability discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 433-2025-01526. On or about February 21, 2025, the EEOC issued the plaintiff a "Notice of Right to Sue." (Complaint ¶ 9).

The Plaintiff asserts causes of action in violation of discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*; retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended; negligent infliction of emotional distress; intentional infliction of emotional distress; and negligent supervision and retention of those employees. (Complaint, Count One, Count Two, Count Three, Count Four and Count Five).

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), seen in the "light most favorable to the plaintiff," though the court does not have to accept asserted legal conclusions. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). A complaint must plead facts sufficient "to raise a right to relief above the speculative level" and to satisfy the

court that the claim is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009). However, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) and distinguishing cases) (alteration in original).

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal,* 556 U.S. at 684; *Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754, 768 (4th Cir. 2011).

## ARGUMENT

I. The Court should deny Defendant's motion to dismiss all non-termination ADA accommodations and discrimination claims (Complaint Count One) based on Defendant's discrimination when Plaintiff engaged in protected activities.

The purpose of Rule 12(b)(6) of the Federal Rules of Civil Procedure is to permit trial courts to terminate lawsuits "that are fatally flawed in their legal premise and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. *De Sole v. United States*, 947 F.2d 1169, 1178 n. 13(4th Cir. 1991); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). The court must presume that all well-pleaded allegations are true, resolve all doubts and inferences in the pleader's favor,

and view the pleadings in the light most favorable to the non-moving party. *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243-44 (4th Cir. 1999); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

Pursuant to Rule 8, a pleading is merely required to set forth "**a short and plain statement**" of the claim sufficiently particular to give the court and the parties' notice of the transactions or occurrences intended to be proved showing that the pleader is entitled to relief… Rule 8(f) states that all pleadings shall be so construed as to do substantial justice. Dismissals under Rule 12(b)(6) are disfavored and, in view of the rules' "Notice Pleading" requirements, are not routinely granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999).

Here, Plaintiff was in her last week of new hire training when her manager placed a Chucky doll in her office chair, which interfered with her training and caused harm to her disabilities and worsened her medical conditions. Plaintiff had to seek immediate medical attention and was out of work for eight (8) weeks. (Complaint, ¶¶ 14 – 16). After Plaintiff's return to work in August 2024, she requested and was approved for a reasonable accommodation based on her disabilities. Plaintiff was subjected to discrimination and retaliation when she was given a performance concern document in November 2024. (Complaint, ¶ 23.) Plaintiff then complained of disability discrimination and was retaliated against thereafter by having her approved reasonable accommodation stopped and Plaintiff was threatened with termination due to her anxiety and emotional problems. (Complaint, ¶¶ 24, 27, and 30). Plaintiff engaged in protected activity when she requested a reasonable

7

accommodation and Plaintiff engaged in protected activity when she complained of disability discrimination to the Defendant.

Unlike Title VII of the Civil Rights Act, which contains a motivating factor provision in its text, ADA liability requires a determination that the employee's disability was a "but for cause" of the adverse employment action. *Gentry v. East West Partners Club Management Co. Inc.*, 816 F.3d 228, 235-36 (4th Cir. 2018). An adverse employment action is an event that negatively affects "the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). Plaintiff suffered an adverse action when she was told that she could no longer leave work at 3:00 p.m., for medical treatment of one of her disabilities, which was the basis of her approved reasonable accommodation.

II. Plaintiff's Title VII of the Civil Rights Act of 1964 Retaliation Claim.

We have determined that we do not need to be heard on these claims and present no evidence pertaining to the Title VII Retaliation claim. In the alternative, Plaintiff has filed an Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Local Rule 7.1(b) of the Eastern District of North Carolina to correct the retaliation claim as an ADA retaliation claim.

III. This Court should deny Defendant's Motion to Dismiss Plaintiff's NIED claim (Complaint Count Three) because Plaintiff's injury was reasonably foreseeable, and Plaintiff alleges negligent conduct.

Under North Carolina law, the elements of a negligent infliction of emotional distress claim are: 1) that defendant negligently engaged in conduct, 2) that was reasonably foreseeable

8

to cause plaintiff severe emotional distress, and 3) that this conduct did in fact cause plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, reh'g denied, 327 N.C. 644, 399 S.E.2d 133 (1990). Here, Plaintiff claims that the Defendant was negligent when Korr placed a Chucky doll in Plaintiff's office chair knowing that the Plaintiff had a fear of dolls. (Complaint ¶ 14-15) Plaintiff was treated by her medical provider on the same day of the Chucky doll incident and was placed on a medical leave to treat her disabilities. Plaintiff's medical provider placed her on a medical leave for eight (8) weeks. Plaintiff further contends that she was newly diagnosed with post-traumatic stress disorder ("PTSD") after the Chucky doll incident. (Complaint ¶ 16). Plaintiff contends that Korr's negligent conduct did in fact cause her to suffer severe emotional distress. Additionally Plaintiff claims that the Defendant was negligent in the handling and investigation of Plaintiff's complaints, in not properly dealing with discrimination and retaliation of its managers, and in not offering an appropriate remedy to Plaintiff. (Complaint, ¶ 24.) Plaintiff complained to Defendant and because Defendant failed to deal with the discrimination and retaliation, Briley and Wood further subjected Plaintiff to discrimination based on her disabilities on January 29, 2025 wherein Plaintiff discussed the incident from the teller line when Briley spoke to Plaintiff in an aggressive loud tone in the presence of a coworker. Plaintiff contends that Briley became angry, told Plaintiff that she would receive another write up and slammed Plaintiff's office door as she walked out of Plaintiff's office. (Complaint ¶ 29). After the meeting with Briley on January 29, 2025, Wood came into Plaintiff's office thereafter and told Plaintiff that Plaintiff's approved reasonable accommodation to leave work at 3:00

p.m., was affecting Plaintiff's coworkers because they also needed time off. Wood further stated to Plaintiff that Wood did not believe this job was the right fit for Plaintiff and that Plaintiff cannot keep using her anxiety and emotional problems as an excuse. Wood gave Plaintiff a document and notified Plaintiff that she would be terminated next month if she did not improve. (Complaint ¶ 30). Plaintiff contends that she suffered several panic attacks as a result of the meetings with Briley and Wood on January 29, 2025. (Complaint ¶ 31). It was reasonably foreseeable that Briley and Wood's conduct would cause Plaintiff severe emotional distress. Severe emotional distress has been defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

- A. Plaintiff's NIED claim is not barred by the North Carolina Workers' Compensation Act ("WCA") because the discrimination and retaliation she suffered as a result of Defendant's negligence was not a natural or probable consequence of her employment.

Generally, the WCA provides exclusive remedy for workplace injuries caused by negligent conduct. N.C. Gen. Stat. § 97-10.1; *see also Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244, 247 (1985). However, as noted in *Riley v. Debaer*, 149 N.C. App. 520, 526-527, 562 S.E.2d 69, 72-73 (2002); aff'd, 356 N.C. 426, 571 S.E.2d 587 (2002), the courts recognize exceptions to the WCA's exclusivity provision for emotional distress injuries related to, *inter*

*alia*, sexual harassment and discrimination[1], racial discrimination and disability discrimination,[2] age discrimination,[3] and FMLA violations[4] because severe emotional distress due to such misconduct is not a "natural and probable consequence or incident of the employment." *Compare Hogan,* 79 N.C. App. 483, 340 S.E.2d 116, 124 (quoting *Robbins v. Nicholson,* 281 N.C. 234, 239, 188 S.E.2d 350, 354 (1972), *with Caple v. Bullard Rests., Inc.,* 152 N.C. App. 421, 421-22, 430, 567 S.E.2d 828, 829-30, 834 (2002) (holding NIED claim barred by the WCA where plaintiff night manager at fast food restaurant was robbed by a coworker because "robbery is a general risk when you count money at a business at closing time" and distinguished *Hogan* because "no one takes a job expecting to be sexually harassed"), *and Boggess v. Roper*, No. 3:04CV92, 2006 U.S. Dist. LEXIS 63057 *26-27 (W.D.N.C. Sept. 1, 2006) (granting summary judgment on plaintiff's NIED claims insofar as they were based on the "verbal abuse, intimidation, and humiliation" that occurred at work because they were barred by the WCA, but held that plaintiff's claims for emotional distress related to alleged sexual

---

[1] *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d, rev. denied by 317 N.C. 334, 346 S.E.2d 140 (1986) (holding that the exclusivity provisions of the Workers' Compensation Act did not bar a claim of IIED against the employer based on the allegation of sexual harassment); *Brown v. Burlington Industries, Inc.,* 93 M.C. App. 431, 378 S.E.2d 232, rev. allowed by 325 N.C. 270, 384 S.E.2d 513, cert. allowed by 325 N.C. 704, 387 S.E.2d 55 (1989), and rev. dismissed as improvidently granted by 326 N.C. 356, 388 S.E.2d 769 (1990) (holding that the exclusivity provisions of he Workers' Compensation Act did not bar a claim of IIED against the employer based on the allegation of sexual harassment); *Ridenhouser v. Concord Screen Printers, Inc.,* 40 F. Supp. 2d 744 (M.D.N.C. 1999) (holding that the exclusivity provisions of the Workers' Compensation Act did not bar claims of IIED and NIED against the employer based on the allegation of sexual harassment)." *Riley,* 149 N.C. App. At 526-27, 562 S.E.2d at 72-73.

[2] *Thomas v. Northern Telecom, Inc.,* 157 F. Supp. 2d 627 (M.D.N.C. 2000) (holding that the exclusivity provisions of the Workers' Compensation Act did not bar claims of IIED and NIED against the employer based on the allegations of racial and disability discrimination)." *Riley,* 149 N.C. App. At 526-27, 562 S.E.2d at 72-73.

[3] "*Atkins v. USF Dugan, Inc.,* 106 F. Supp. 2d 799 (M.D.N.C. 1999) holding that the exclusivity provisions of the Workers' Compensation Act did not bar claims of IIED and NIED based on the allegations of age discrimination)." *Riley,* 149 N.C. App. Aat 526-27, 562 S.E.2d at 72-73.

[4] *"Buser v. Southern Food Service, Inc.,* 73 F. Supp. 2d 556 (M.D.N.C. 1999) (holding that the exclusivity provisions of the Workers' Compensation Act did not bar claims of IIED and NIED against the employer and the employer's vice president based on alleged violations of the Family Medical Leave Act)." *Riley,* 149 N.C. App. At 526-27, 562 S.E.2d at 72-73.

11

harassment were not similarly barred).

Plaintiff claims NIED for injuries related to Defendant's managers' discriminatory and retaliatory conduct alleged to be in violation of the ADA, and Defendant's negligence related to said conduct in spite of Plaintiff's complaints to Defendant. (Complaint ¶¶ 23-24, 27, 29-31.) In *Thomas*, *Atkins*, and *Buser*, the courts held that NIED claims related to such conduct are not barred by WCA exclusivity. *See Thomas,* 157 F. Supp. 2d 627, 636-37 (holding that race discrimination related IIED and NIED claims not barred by WCA exclusivity); *Atkins*, 106 F. Supp. 2d 799, 811-14 (holding that age discrimination related IIED and NIED claims not barred by WCA exclusivity); *Buser*, 73 F. Supp. 2d at 568-71 (holding that FMLA violation-related IIED and NIED claims not barred by WCA exclusivity). This Court should rule that Plaintiff's NIED claim is not barred by the WCA's exclusivity provisions because no one takes a job expecting to be discriminated and retaliated against in violation of federal law and state public policy in the manner described herein.

      B.     It was reasonably foreseeable that Defendant's negligent conduct would cause Plaintiff severe emotional distress because Defendant knew that Plaintiff had serious health conditions that were exacerbated after the Chucky doll incident.

"Questions of foreseeability and proximate cause must be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury." *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98 (affirming reversal of trial court's Rule 12(b)(6) dismissal or 12(c) judgment on the pleadings of plaintiff's NIED claim) (citations omitted); *see Parker v. D.R. Kincaid Chair Co.*, 5:10CV97-V, 2011 U.S. Dist. LEXIS

85061, *12-*14 (W.D.N.C. Aug. 2, 2011) (denying motion to dismiss NIED claim in employment discrimination case). In evaluating a Rule 12(b)(6) motion to dismiss, the courts "must accept as true *all* factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, seen in the "light most favorable to the plaintiff." *Schatz*, 943 F.2d at 489.

Plaintiff's NIED claim is based on the Defendant's negligence as a whole starting from when she returned to work and Briley stated to Plaintiff that she knew about the Chucky doll incident to its lack of handling and investigation of Plaintiff's complaint through her last day at work when Briley stopped her approved reasonable accommodation and Wood threatened to fire Plaintiff due to her disabilities in the manner described herein. (Complaint ¶¶ 18, 23-24, 27, 29-31). As recounted in Argument, Part I. *supra*, Defendant was well aware of Plaintiff's complaint of discrimination and retaliation. Defendant was aware that Plaintiff was on approved reasonable accommodation for continued treatment as a result of the Chucky doll incident. (Complaint ¶ 17). Defendant's manager ridiculed Plaintiff in the presence of coworkers when she was doing her job in a satisfactory manner. (Complaint ¶ 20.) Defendants' managers scrutinized Plaintiff's mistakes when other employees made mistakes and were not treated in the same manner and Defendant's managers gave Plaintiff a performance concerns document. (Complaint ¶ 23). Defendant's manager was aggressive with Plaintiff for following procedure to leave for her approved reasonable accommodation appointment when Defendant's manager was out of the office the day before. (Complaint ¶ 26). Defendant's managers required Plaintiff to take her lunch break at a set time when other employees were not required to do so and Defendant's manager then threatened to give Plaintiff another write up, stopped Plaintiff's

13

approved reasonable accommodation for treatment and then slammed Plaintiff's office door. (Complaint ¶¶ 27-29). Defendant's manager then threatened to fire Plaintiff due to her disabilities. (Complaint ¶ 30). Defendant should have reasonably foreseen the potential impact of its actions on Plaintiff would cause Plaintiff severe emotional distress.

  IV. This Court should deny Defendant's Motion to Dismiss Plaintiff's IIED claim (Complaint, Count Four) because Defendant's manager placed a Chucky doll in Plaintiff's office chair when the manager was aware of Plaintiff's fear of dolls and Defendant made a "be terminated" demand due to Plaintiff's disabilities, were sufficiently extreme and outrageous.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing that the defendant engaged in "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Chapman by & Through Chapman v. Byrd* 124 N.C. App. 13 *; 475 S.E.2d 734 *citing Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The second element may also be stated by allegations that the defendant acted with "reckless indifference to the likelihood" that his or her acts "will cause severe emotional distress." *Id.* In *Chapman,* plaintiff's IIED claims allege that defendants Byrd and Reaves, individually and as agents for the County, displayed extreme and outrageous behavior by repeating rumors that someone at the Colonial House had AIDS and/or was HIV positive and by failing to investigate the truth and falsity of the alleged rumors prior to repeating them and that they did so with reckless indifference to the likelihood of causing plaintiffs severe emotional distress, and that plaintiffs suffered severe emotional distress, mental anguish, humiliation and ridicule as a proximate result of the statements. The determination of

what constitutes extreme and outrageous conduct is a question of law. *Shillington v. K-Mart Corp.,* 102 N.C. App. 187, 198, 402 S.E.2d 155, 161 (1991). The court held that given these circumstances, the statements made by defendants Byrd and Reaves can, as a matter of law, constitute extreme and outrageous conduct. The court concludes that the complaints do not reveal an insurmountable bar to recovery. Although their allegations regarding severe emotional distress are somewhat conclusory, our courts have not required detailed fact pleading on this element. *E.g., Dixon v. Stuart*, 85 N.C. App. 338, 340-41, 354 S.E.2d 757, 758-59 (1987). The court decided that the trial court erred by dismissing this claim. *Chapman by & Through Chapman v. Byrd* 124 N.C. App. 13 at 20.

     Here, Defendant's manager intentionally placed the Chucky doll in Plaintiff's office chair knowing that she had a fear of dolls. (Complaint ¶¶ 14-15 ). Plaintiff suffered severe emotional distress as illustrated by her being out of work for eight (8) weeks after the incident to be treated by her medical provider. (Complaint ¶ 16). Plaintiff was newly diagnosed with PTSD after the Chucky doll incident and continued to receive treatment after returning to work. (Complaint ¶ 17 ). Defendant's manager then reminded Plaintiff of the Chucky doll incident when she returned to work. Defendant's managers thereafter ridiculed Plaintiff in the presence of her coworkers, scrutinized her work when other coworkers were not treated the same and was given a performance correction document. (Complaint ¶¶ 20-21 ). Defendant's manager stopped Plaintiff's approved reasonable accommodation, that other coworkers wanted time off, threatened to give Plaintiff another write up and slammed the door of Plaintiff's office. (Complaint ¶¶ 27-29). Defendant's manager then told Plaintiff that she cannot keep using her

15

anxiety and emotional problems as an excuse. Wood gave Plaintiff a document and notified Plaintiff that she would be terminated next month if she did not improve. (Complaint ¶ 30).

Plaintiff contends that this constituted extreme and outrageous conduct given the totality of the circumstances.

V. This Court should deny Defendant's Motion to Dismiss Plaintiff's Negligence Supervision and Retention ( Complaint, Count Five)

In the Fourth Circuit, the court held that an IIED claim can form the basis for negligent retention or supervision when an underlying common law tort was committed. *O'Neal v. Harrison,* No. 5;14-CV-0198, 2015 U.S. Dist. LEXIS 30582 at *24-25 (E.D.N.C. Feb. 13, 2015, *adopted in pertinent part by* 2015 U.S. Dist. LEXIS 30584 (E.D.N.C. Mar. 11, 2015).

Here, Defendant's Manager committed a tort against Plaintiff when he intentionally placed a Chucky doll in Plaintiff's office chair when he had knowledge of her fear of dolls. (Complaint ¶¶ 14-15). Defendant's manager intended to cause Plaintiff harm and did cause Plaintiff severe emotional distress, which required medical treatment for eight (8) weeks. (Complaint ¶ 16). Plaintiff was injured as a result of Defendant's manager's incompetency or unfitness.

In the present case, the Plaintiff has satisfied all of the pleadings requirements under the law when viewed in the context of notice pleading and has provided the Defendant with sufficient notice of the claims against it. Alternatively, the Plaintiff has filed an Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Local Rule 7.1(b) of the Eastern District of North Carolina to include more detailed allegations since there are no

16

issues regarding the statute of limitations or futility.

<u>CONCLUSION</u>

Based on the foregoing, the Defendant's Motion to Dismiss Plaintiff's Complaint should be DENIED.

This the 11th day of July, 2025.

        LISA WALKER, ATTORNEY AT LAW PLLC

        BY:   /s/Lisa Walker
            Lisa Walker
            N.C. Bar #47809
            P.O. Box 1473
            Knightdale, NC 27545
            Telephone: (919) 390-1316
            Facsimile: (919) 746-7845
            Email: lisa@lisawalkerlaw.com
            *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of July, 2025, the foregoing

document was filed electronically with the Clerk of the Court using the CM/ECF system,

which will send notification of filing to the following Defendants' counsel of record:

>Jill S. Stricklin
>N.C. State Bar No. 20145
>Email: jstricklin@constangy.com
>Alexis M. Holloway
>N.C. State Bar No. 61775
>Email: amholloway@constangy.com
>CONSTANGY, BROOKS, SMITH &
>PROPHETE, LLP
>One West 4th Street, Ste 850
>Winston-Salem, NC 27101
>Telephone: (336) 721-1001
>Facsimile: (336) 748-9112
>*Attorneys for Defendant*

>/s/Lisa Walker
>LISA WALKER
>*Attorney for Plaintiff*