IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA JONES, | ) | **Civil Action No.:** |
| | ) | **5:25-cv-00268-FL** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANT'S** |
| TRUIST BANK, | ) | **MOTION TO DISMISS FIRST** |
| | ) | **AMENDED COMPLAINT** |
| Defendant. | ) | |
| | ) | |

## STATEMENT OF CASE

In response to Defendant's Motion to Dismiss (Doc. 8), Plaintiff Debra Jones ("Plaintiff") filed an Amended Complaint (Doc. 10) asserting claims against her employer Truist Bank ("Truist") for disability discrimination in violation of the Americans with Disabilities Act (Count One), retaliation in violation of the ADA (Count Two), intentional infliction of emotional distress ("IIED") (Count Three), negligent infliction of emotional distress ("NIED") (Count Four), and negligent supervision and retention (Count Five).

Truist moves to dismiss Plaintiff's action, in its entirety, for failure to state claims upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Even after amending her Complaint, Plaintiff still fails to state viable claims for relief against Truist.

## SUMMARY OF ARGUMENT

**Count One – ADA Discrimination**

Plaintiff fails to plausibly allege the required elements of her disparate treatment

claim under the ADA. She alleges no facts regarding the essential functions of her Relationship Banker position or otherwise indicating she was a qualified individual. Nor does Plaintiff allege facts indicating her alleged comparators were similarly situated or that she was subjected to an adverse employment action.

In amending her pleading, Plaintiff added a claim that Truist denied her reasonable accommodations under the ADA. She failed, however, to exhaust her administrative remedies as to any such claim. The Charge of Discrimination that she filed with the U.S. Equal Employment Opportunity Commission ("EEOC") does not allege failure to accommodate, but instead asserts only that Truist "question[ed]" her accommodation.

**Count Two – ADA Retaliation**

Having abandoned the Title VII claim asserted in her original Complaint, Plaintiff now alleges that Truist retaliated against her in violation of the ADA. She does not, however, allege facts reflecting the required "but-for" causation or indicate that she sustained any materially adverse retaliatory action. She also failed to exhaust her administrative remedies as to claims based on certain protected activity and retaliatory actions that she omitted from her EEOC Charge.

**Count Three – Intentional Infliction of Emotional Distress**

Plaintiff's IIED claim fails under North Carolina law, as even her amended complaint fails to allege conduct satisfying the stringent "extreme and outrageous" standard.

**Count Four – Negligent Infliction of Emotional Distress**

Plaintiff fails to allege negligent conduct, as required to state a viable claim for

NIED. Instead, she relies on allegations of inherently intentional acts of discrimination and retaliation and asserts in a conclusory manner that they were committed negligently. To the extent Plaintiff does allege negligence, any such claim is barred by the exclusive remedy provisions of the North Carolina Workers' Compensation Act.

**Count Five – Negligent Supervision and Retention**

Plaintiff fails to plausibly allege the required elements of a negligent supervision and retention claim. She alleges no facts indicating a Truist employee engaged in tortious conduct under North Carolina common law, that the employee was incompetent, or that Truist had advance notice of this incompetency.

## STATEMENT OF ALLEGED FACTS[1]

**Plaintiff's Employment with Truist**

Plaintiff began her employment with Truist in April 2024 as a Relationship Banker. (Doc. 10 ¶ 11.) This was a full-time position; Plaintiff worked at least 40 hours per week, Monday through Friday. (*Id*. at ¶ 12.) Plaintiff has been diagnosed with major depressive disorder, generalized anxiety disorder, and vitiligo, which is an autoimmune disorder. (*Id*. at ¶ 13.)

**"Chucky Doll" Incident and Plaintiff's First Leave of Absence**

In June 2024, during the last week of Plaintiff's new hire training, manager Matthew Korr [sic—"Korff"] placed a "Chucky doll" in Plaintiff's office chair. (*Id*. at ¶ 14.)

---

[1] For the limited purposes of this Motion, Defendant states--as it must, at this stage of the litigation—the facts as alleged by Plaintiff in her Amended Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nothing about this filing should be construed as an admission of the veracity of Plaintiff's allegations, many of which are disputed.

According to Plaintiff, Korff laughed when he saw Plaintiff's reaction to the doll. (*Id*.) Plaintiff alleges that Korff's actions interfered with her training, exacerbated her medical condition, and prompted her to seek immediate medical attention. (*Id*.) According to Plaintiff, she had previously told Korff about her fear of dolls and how this fear allegedly impacted her disabilities. (*Id*. at ¶ 15.)

That same day, Plaintiff received treatment from her healthcare provider and was placed on a medical leave of absence for the ensuing eight (8) weeks. (*Id*. at ¶ 16.) She was newly diagnosed with post-traumatic stress disorder ("PTSD") after the doll incident. (*Id*.)

**Plaintiff's Return to Work with Accommodations**

On August 15, 2024, Plaintiff's medical provider released her to return to work. (*Id*. at ¶ 17.) Plaintiff requested, as an accommodation, permission to leave work early (at 3:00 PM) three times a week for treatment of auto-immune disorder flare-ups allegedly resulting from the Chucky doll incident. (*Id*.) Truist approved Plaintiff's accommodation request. (*Id*. at ¶ 19.) Upon returning to work, Plaintiff began reporting to a new manager, Jennifer Briley ("Briley"), who told Plaintiff she knew about the Chucky doll incident and provided her a different office. (*Id*. at ¶ 20.)

**"Fraudulent Vigilant" Joke**

On November 15, 2024, Plaintiff discovered a fraudulent check while performing her job duties. (*Id*. at ¶ 22.) Briley joked, in the presence of Plaintiff and other team members, that Plaintiff was always "fraudulent vigilant." (*Id*.) Briley and the team laughed at the joke, even though Plaintiff contends she was performing her job in a satisfactory manner when she discovered the fraud. (*Id*.)

**Performance Concerns Meeting and Subsequent HR Complaint**

Briley and her manager, Tracy Wood ("Wood"), asked to meet with Plaintiff on November 15, 2024, to address Plaintiff's job-related errors. (*Id*. at ¶ 23.) During that meeting, Plaintiff stated that Briley's joke about Plaintiff being "fraudulent vigilant" was offensive. (*Id*.) Plaintiff admits that she made job-related errors, but claims two of her co-workers—Yasmin Martinez ("Martinez") and Ebony (last name unknown)—also made mistakes. (*Id*. at ¶ 24.) Plaintiff asserts that she was the only employee on her work team who had disabilities that required "observable" accommodations and, further, that none of her co-workers were subject to similar scrutiny or disciplinary actions. (*Id*. at ¶¶ 18, 25.)

On November 19, 2024, Briley presented Plaintiff with a "performance concerns document." (*Id*. at ¶ 26.) That same day, Plaintiff sent an email to manager H.R. White ("White") regarding the meeting in which Briley and Wood delivered the performance-related document. (*Id*. at ¶ 27.) In that email, Plaintiff informed White that she believed Briley was treating her differently than her co-workers based on her disabilities and that Briley discussed Plaintiff's approved accommodations with the team. (*Id*.) White referred Plaintiff to Lucinda Austin in Human Resources, who met with Plaintiff to discuss Plaintiff's concerns. (*Id*.)

**Discussion of Plaintiff's Reduced Work Schedule**

On January 28, 2025, when Briley was out of work, Plaintiff notified Truist's lead person that she was leaving early that day for a doctor's appointment, based on her approved accommodation. (*Id*. at ¶¶ 29-30.) The next day, Briley approached Plaintiff in the teller line, in front of a co-worker, and told Plaintiff, in "an aggressive loud tone," that

Plaintiff should have messaged Briley the previous day to inform her of Plaintiff's early departure. (*Id*. at ¶ 30.)

On January 29, 2025, Briley informed Plaintiff that she would have to take her lunch break at the same time every day and she could not leave earlier than her scheduled appointment time for her approved accommodation. (*Id*. at ¶ 31.) Plaintiff contends, upon information and belief, that Truist allowed her coworkers, including Martinez, to leave work early for personal reasons and did not require them to take their lunch breaks at the same time every day. (*Id*. at ¶ 32.)

Briley also told Plaintiff that, because Truist had not received her updated documents, Plaintiff now would be permitted to leave work at 4:00 PM, instead of 3:00 PM. (*Id*. at ¶ 31.) Plaintiff had been taking her lunch break at 2:00 PM on days that she had treatments scheduled at 3:00 PM. (*Id*.) According to Plaintiff, Truist "stopped" her approved accommodation. (*Id*.)

While meeting with Briley on January 29th, Plaintiff discussed the incident on the teller line when Briley had spoken to her "in a loud aggressive tone" in the presence of a coworker. (*Id*. at ¶ 33.) Briley allegedly became angry, told Plaintiff she would receive another write-up, and slammed the door as she left Plaintiff's office. (*Id*.)

Later that day, Wood told Plaintiff that her approved accommodation to leave work at 3:00 PM was affecting Plaintiff's co-workers because they also needed time off. (*Id*. at ¶ 34.) Wood also said she did not believe the job was the right fit for Plaintiff and Plaintiff could not keep using her anxiety and emotional problems as an excuse. (*Id*.) Wood gave Plaintiff "a document" and notified Plaintiff she would be terminated the next month if she

did not show improvement. (*Id.*)

**Plaintiff's Second Leave of Absence**

Plaintiff allegedly sustained "several panic attacks" due to the meetings with Briley and Wood on January 29th. (*Id.* at ¶ 35.) Plaintiff met with her medical provider and was taken out of work for treatment of her alleged disabilities. (*Id.*) On March 12, 2025, Plaintiff received notice from a co-worker, based on a directive from Briley, that Plaintiff had to collect her personal belongings from Truist. (*Id.* at ¶ 38.) On April 14, 2025, Wood notified Plaintiff that Truist would hold her belongings for forty-five (45) days. (*Id.*)

**Proceedings Before the EEOC**

On February 18, Plaintiff filed an EEOC Charge against Truist (EEOC Charge No. 433-2025-01526), alleging she was subjected to disability discrimination and retaliation[2] between April 15, 2024, and January 31, 2025. (*See* Exhibit 1, filed as an attachment to Defendant's Motion to Dismiss.) In the narrative of the Charge, Plaintiff alleged that Korff placed a Chucky doll in her chair, which interfered with her training and caused her disabling medical condition to worsen such that she needed to seek immediate medical attention. (*Id.*) She alleged, "After I provided [Truist] with a reasonable accommodation request, [Truist] retaliated by questioning my reasonable accommodation and using any mistake that I made as reasons for discipline and threats of termination. However, my comparator[s] made the same errors, but they were treated better." (*Id.*)

---

[2] Plaintiff asserted in her Charge that she was subjected to retaliation under Title VII, but neither the Charge nor the Amended Complaint allege any facts substantiating such a claim. Although she asserted a cause of action under Title VII in her original complaint, Plaintiff has abandoned that claim by omitting it from her amended pleading.

The Amended Complaint references this Charge in connection with Plaintiff's assertion that she has exhausted her administration remedies. (Doc. 10 ¶ 9.) Plaintiff further alleges that, on February 21, 2025, the EEOC issued a Notice of Rights. (*Id.*)

## QUESTIONS PRESENTED

I.     Whether Plaintiff plausibly alleges facts establishing the required elements of disparate treatment under the ADA.

II.     Whether Plaintiff is barred from alleging a failure-to-accommodate claim under the ADA, given her failure to exhaust administrative remedies.

III.     Whether Plaintiff plausibly alleges a retaliation claim under the ADA.

IV.     Whether Plaintiff plausibly alleges a claim of IIED under North Carolina law.

V.     Whether Plaintiff plausibly alleges the elements of NIED under North Carolina law.

VI.     Whether Plaintiff plausibly alleges the necessary elements of negligent supervision and retention under North Carolina law.

## ARGUMENT AND AUTHORITIES

A motion to dismiss for failure to state a claim upon which relief may be granted challenges the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Those factual allegations, however, "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 545 and 547. A formulaic recitation of a cause of action's elements supported by mere conclusory statements are insufficient to meet this standard. *Id.* at 545; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, to achieve factual plausibility, plaintiffs must allege more than "a naked assertion . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. A claim will only have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although an employment discrimination plaintiff need not plead a *prima facie* case to withstand a motion to dismiss, she must still plead every element of the cause of action. *Miller v. Md. Dep't of Nat. Res.*, 813 Fed. Appx. 869, 874 (4th Cir. 2020) (citation modified).

**I.    Plaintiff fails to plausibly allege a disparate treatment claim under the ADA.**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a disparate treatment claim, a plaintiff must prove that: (1) she has a disability, (2) she is a "qualified individual" for the employment in question, and (3) her employer discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015); *see also EEOC v. McLeod Health, Inc*., 914 F.3d 876, 883 (4th Cir. 2019).

**A.    Plaintiff fails to plausibly allege that she was a qualified individual.**

The ADA permits only qualified individuals to state an employment discrimination

claim. *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994); *see also Stanley v. City of Sanford, Fla.*, 606 U.S. ---, 145 S. Ct. 2058, 2071 (2025). The statute defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A job function is essential when "the reason the position exists is to perform that function, when there aren't enough employees available to perform the function, or when the function is so specialized that someone is hired specifically because of his or her expertise in performing that function." *Jacobs*, 780 F.3d at 579 (citing 29 C.F.R. § 1630.2(n)(2)) (citation modified).

In her Amended Complaint, Plaintiff fails to articulate the essential functions of her job or allege any facts demonstrating she could perform those functions with or without reasonable accommodations. As to her job functions, Plaintiff alleges only that her Relationship Banker position entailed full-time work, at least 40 hour per week, Monday through Friday. (Doc. 10 ¶ 12.) By her own admission, Plaintiff stopped satisfying this full-time job requirement in August 2024, once she began leaving work early three days per week. (*Id.* at ¶¶ 17, 19.)

To show she was nonetheless qualified, Plaintiff offers only conclusory assertions that she was performing her job duties satisfactorily, and prior to November 19, 2024, had received no "unsatisfactory reviews." (Doc. 10 ¶¶ 11, 24.) At that point, however, Plaintiff had been actively employed with Truist for fewer than six months, given her April 2024 hire date and eight weeks of medical leave from June-August 2024. (*Id.* at ¶¶ 11, 16-17.) Moreover, Plaintiff concedes that she made job-related errors and her managers met with

her on November 19, 2024, to address these mistakes. (*Id*. at ¶¶ 23-24, 26-27.) Given these facts, Plaintiff's conclusory assertions that she was satisfactorily performing her job are insufficient to plausibly allege she was a qualified individual within the ADA's meaning. *See Futrell v. Blanton's Air, Plumbing & Elec., LLC*, 5:23-CV-739, 2024 WL 3852132, at *4 (E.D.N.C. Aug. 16, 2024); *Chisholm v. Mountaire Farms of N.C. Corp.*, 629 F. Supp.3d 368, 375 (M.D.N.C. 2022); *Thompson v. Wakefern Food Corp.*, No. RPB-15-1240, 2015 WL 9311972, at *6 (D. Md. Dec. 13, 2015); *see also Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp.3d 616, 623 (D. Md. 2014) ("Without even a cursory description of what kind of work the Plaintiff does, she has simply recited the elements of the cause of action.").

### B. Plaintiff fails to allege an adverse employment action.

An ADA disparate treatment claim requires a plaintiff to allege specific facts indicating that the alleged discrimination adversely impacted the "terms, conditions, and privileges of [her] employment." 42 U.S.C. § 12112(a). The Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), held that an employment action need not be "significant" to be actionable, at least in the context of Title VII (which contains similar statutory language barring discrimination in the "terms, conditions, or privileges of employment").[3] *Id*. at 355. The *Muldrow* ruling did not, however, alter the requirement that an alleged employment action "must show some harm respecting an identifiable term or condition of employment." *Id*.; *see also Buck v. Modine Mfg. Co*., 776 F.Supp.3d 357, 370 (W.D. Va. 2025) (the plaintiff is still required, under *Muldrow*, to plead facts connecting

---

[3] This Court has applied *Muldrow* when analyzing claims under the ADA. *See, e.g., Sanger v. NVR, Inc*., No. 5:24-CV-438-D, 2025 WL 1998005, at *4 (E.D.N.C. Jul. 17, 2025).

the alleged discriminatory harm to "an identifiable term or condition of employment").

Plaintiff alleges that her managers met with her to address work-related errors, gave her a "performance concerns document," and notified her that she would be terminated the following month if she did not improve. (Doc. 10 ¶¶ 23, 26, 34). Plaintiff further cites an instance where her supervisor loudly admonished her in front of another employee about failing to message her supervisor when she was leaving work early the previous day. (*Id.* at ¶ 30.)

Plaintiff fails to allege facts connecting any of the job-related criticism and performance discussions to a tangible effect on the terms and conditions of her employment, as required to plead an adverse action. *See Credle v. Va. Cmty. Coll. Sys.*, No. 3:24cv233, 2025 WL 27827, at *8 (E.D. Va. Jan. 3, 2025) (letter of reprimand does not constitute adverse employment action unless the reprimand was "tethered to an adverse impact on the terms and conditions of the plaintiff's employment"); *Batchelor v. City of Wilson*, 747 F. Supp.3d 845, 860 (E.D.N.C. 2024) (the plaintiff failed to plausibly allege that an incident where a superior expressed concern about the plaintiff's job performance as a supervisor harmed an identifiable term or condition of employment); *Downer v. Prince Georges Cnty. Bd. of Educ.*, No. 21-1618-BAH, 2024 WL 3277563, at *9 (D. Md. Jul. 2, 2024) (finding that unfounded and critical statements about a plaintiff's job performance, absent any negative employment repercussions, did not constitute adverse action).

In support of her ADA disparate treatment claim, Plaintiff also alleges she was required to take lunch breaks at a specified time and was precluded from leaving work earlier than necessary for her scheduled medical appointments. (Doc. 10 ¶¶ 31-32.)

Plaintiff does not plausibly allege facts indicating that these directives, which related to early departures that Truist permitted as an accommodation for her healthcare treatment, resulted in any concrete harm to the terms and conditions of her employment. *See Couch v. City of Va. Beach*, 768 F. Supp.3d 741, 753 (E.D. Va. 2025) (the plaintiff's allegations of changed job duties, work criticism, missed meetings, unprofessional behavior, rude comments from a supervisor "fall far short of constituting adverse employment actions").

### C. Plaintiff fails to allege facts indicating she was treated less favorably than similarly situated, non-disabled employees.

Evidence that other employees who were similarly situated to the plaintiff (but-for the protected characteristic) were treated more favorably can constitute evidence that an employer's action was taken because of discrimination. *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 381 (4th Cir. 2022) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)). Relevant considerations for a similarly situated inquiry include whether the plaintiff and comparator "dealt with the same supervisor," were "subject to the same standards," and "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Id.* (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (per curiam)).

Although Plaintiff alleges that she was treated differently than her co-workers when she made job-related errors, she does not indicate whether these co-workers held the same job positions and, therefore, were subject to the same standards. Nor does she specify the nature, magnitude, or frequency of her mistakes in comparison with those made by her co-

workers. Similarly, Plaintiff alleges that others also left work early and were not required to take their lunch breaks at the same time each day, but she does not allege what positions these co-workers held or how often they were excused early from work in comparison with Plaintiff. Nor does she identify anyone else who was working a reduced schedule, as Plaintiff was.

Plaintiff's failure to allege facts indicating similarly situated, non-disabled employees received more favorable treatment defeats her disparate treatment claim. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (affirming dismissal of race discrimination claim where the plaintiff alleged he was "treated differently as a result of his race than whites," but "fail[ed] to establish a plausible basis for believing [the allegedly comparable supervisor] and Coleman were similarly situated or that race was the true basis for Coleman's termination"); *Seabrook v. Esper*, No. 5:19-CV-236-D, 2020 WL 2101014, at *3 (E.D.N.C. May 1, 2020) ("Where plaintiff offers a comparator, the plausibility of her claim depends upon whether that comparator is similarly situated").

## II.  Plaintiff failed to exhaust her administrative remedies before the EEOC as to her ADA failure-to-accommodate claim.

Before a plaintiff sues under the ADA, she must first exhaust her administrative remedies by filing a charge with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (Title VII); *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp.2d 889, 894 (D. Md. 2011) ("Under [the ADA], the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII."). The EEOC charge defines the scope of a plaintiff's right to bring a lawsuit. *Smith v. First Union Nat'l Bank*,

202 F.3d 234, 247 (4th Cir. 2000). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by a reasonable investigation into the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techns. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Courts in the Fourth Circuit consistently dismiss claims where the plaintiff has failed to exhaust administrative remedies relating to those claims. *Chacko*, 429 F.3d at 513. ("We have generally dismissed any claims in which the plaintiff has not exhausted [her] administrative remedies before bringing suit.")

"[A] defendant may raise the administrative exhaustion issue on a motion to dismiss," subject to the following caveat: "a failure-to-timely-administratively-exhaust defense may only be decided on a Rule 12(b)(6) motion 'in the relatively rare circumstance [ ] when all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Mills v. Inova Health Care Servs.*, No. 23-2318, 2025 WL 40550 at *2 (4th Cir. Jan. 7, 2025) (quoting *L.N.P v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023)). In addition to the pleading itself, the Court may "also consider documents that are explicitly incorporated into the complaint by reference" and "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Where, as here, a defendant employer premises a motion to dismiss on the failure to exhaust administrative remedies, the court may review the EEOC charge on which the plaintiff's claims rely. *Chisholm*, 629 F. Supp.3d at 372; *White v. Mortg. Dynamics*, 528 F. Supp.2d 576, 579 (D. Md. 2007). In such instances, the EEOC charge, which defines the scope of the plaintiff's civil claims, is deemed integral to the complaint. *Smith*, 202

F.3d at 247; *Alexander v. City of Greensboro*, No. 1:09-CV-934, 2011 WL 13857 at *8 (M.D.N.C. Jan. 4, 2011).

Plaintiff alleges, "All conditions precedent to jurisdiction have occurred or been complied with, as the plaintiff timely submitted a complaint of disability discrimination and retaliation against Defendant with the [EEOC], EEOC Charge No. 433-2025-01526," and "[o]n or about February 21, 2025, the EEOC issued the plaintiff a 'Notice of Right to Sue.'" (Doc. 10 ¶ 9.) Accordingly, all facts necessary to an affirmative defense plainly appear on the face of the complaint and other materials properly considered at the Rule 12(b)(6) phase. *See Mills*, 2025 WL 40550 at *2.

In her Charge, Plaintiff alleged only disparate treatment because of her disability and retaliation. She did not allege that Truist ***denied*** her a reasonable accommodation, and instead asserted only that Truist retaliated against her by ***questioning*** her reasonable accommodation. (*See* Exhibit 1). Consequently, Plaintiff is barred from proceeding with a failure-to-accommodate claim under the ADA. *See Thiessen v. Stewart-Haas Racing, LLC*, 311 F. Supp.3d 739, 744 (M.D.N.C. 2018) (plaintiff failed to exhaust administrative remedies regarding his failure to accommodate, failure to promote and retaliation claims where his EEOC Charge only asserted wrongful discharge); *Tran v. Norvo Nordisk Pharm. Indus. Inc.*, No. 5:14–CV–FL, 2016 WL 1559137, at *11–12, (E.D.N.C. Apr. 16, 2016) (rejecting attempt to expand ADA claim to include allegations, such as failure to accommodate, beyond the wrongful termination claim stated in his EEOC charge).

**III.    Plaintiff fails to plausibly allege facts supporting an ADA retaliation claim.**

To state an ADA retaliation claim, a plaintiff must provide factual allegations showing that she "(i) engaged in an ADA-protected activity; (ii) she later suffered an adverse employment action; and (iii) there is a causal link between the two." *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 173 n.10 (4th Cir. 2024).

Here, Plaintiff alleges that she engaged in protected activity when she requested an accommodation under the ADA on August 15, 2024 and when she complained about perceived disability discrimination to Human Resources on November 19, 2024. (Doc. 10 ¶ 62.) According to Plaintiff, Truist retaliated against her by "pretextually" disciplining her for job performance concerns on November 19, 2024, denying her previously approved accommodation and threatening her with termination on January 29, 2025. (*Id*. at ¶ 64.)

**A.    Plaintiff failed to exhaust administrative remedies regarding the newly asserted protected activity and retaliatory act.**

As an initial matter, Plaintiff failed to exhaust her administrative remedies before the EEOC as to any retaliation claim based on her complaint to Human Resources on November 19, 2024. Plaintiff alleged in her EEOC Charge only that she was subjected to retaliation for making a reasonable accommodation request. (*See* Exhibit 1.) She makes no reference in her EEOC Charge to complaints of disability discrimination. Consequently, she is barred from pursuing such a claim in this litigation. *See Carr v. U.S.*, 674 F. Supp.3d 234, 242 (E.D.N.C. 2023) (where the plaintiff's EEOC charge alleged retaliation as to one allegedly protected activity, she is barred from expanding the formal litigation to include a different allegedly protected activity) (citing *Chacko*, 429 F.3d at 509).

The same holds true for Plaintiff's new contention that Truist retaliated against her by denying her previously approved accommodation. In her EEOC Charge, Plaintiff alleged only that Truist "retaliated by *questioning* [her] reasonable accommodation," not by denying it. (Exhibit 1, emphasis added.) These new fact allegations do not correspond to those in Plaintiff's administrative charge and therefore are procedurally barred. *Thiessen*, 311 F. Supp.3d at 744 (citing *Chacko*, 429 F.3d at 509).

### B. Plaintiff failed to plausibly allege "but-for" causation.

Even considering the procedurally barred allegations, Plaintiff fails to plead facts demonstrating the required causal link between her alleged protected activity and the challenged actions. A plaintiff must plead that her protected activity constituted the "but-for" cause of the materially adverse employment action. *Univ. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Though not conclusive, temporal proximity between the protected activity and the adverse action can show causality. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

Here, the chronology of events undermines any inference of causation. Three months separated Plaintiff's request for accommodations on August 15, 2024 and the performance-related counseling on November 19, 2024. More than five months passed between the August 15, 2024 accommodation request and the alleged denial of the previously approved accommodation and threat of termination on January 29, 2025. The Fourth Circuit has deemed temporal gaps such as these insufficient to establish causation. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (2 months); *Roberts*

*v. Glenn Indus. Grp., Inc*., 998 F.3d 111, 127 (4th Cir. 2021) (3 months); *Horne v. Reznick Fedder & Silverman*, 154 Fed. Appx. 361, 364 (4th Cir. 2005) (2 months).

Moreover, the Amended Complaint reflects non-retaliatory reasons for both the performance concerns and adjustment of Plaintiff's schedule accommodation, thereby negating any inference of "but-for" causation. Plaintiff concedes that she made job-related errors (Doc. 10 ¶ 24), and she alleges her previously approved accommodation was revoked because "Defendant had not received Plaintiff's updated documents." (*Id*. at ¶ 31.)

Even the procedurally barred allegations regarding the November 19th Human Resources complaint would not save Plaintiff's retaliation claim. The HR complaint could not possibly have been the "but-for" cause of the performance-related reprimands, as the reprimands preceded and, in part, triggered the internal complaint. *Carr*, 674 F. Supp.3d at 244 (where an allegedly retaliatory employment decision was made before the plaintiff engaged in protected activity, it is impossible that the protected activity was the "but-for" cause). Plaintiff alleges that Briley and Wood met with her to address her job-related mistakes on November 15th, and Briley issued the "performance concerns document" on November 19th, before Plaintiff made her complaint. (Doc. 10 ¶¶ 23, 26, 27.) Additionally, the November 19, 2024 complaint preceded the January 29, 2025 discussion of Plaintiff's reduced schedule accommodations and threatened termination by more than two months. As stated above, this temporal distance is too remote to demonstrate causality. *See Laurent-Workman*, 54 F.4th at 219.

Plaintiff also fails to allege facts suggesting either Briley or Wood knew about the November 19, 2024 complaint, even though decision-maker knowledge is a key component

of a retaliation claim. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998); *see also Roberts*, 998 F.3d at 125. The fact allegations, taken as a whole, render it impossible to reasonably infer that Plaintiff's Human Resources complaint was the "but-for" cause of the performance-related reprimands or the denial of the previously approved schedule accommodation.

### C.    Plaintiff failed to identify a materially adverse retaliatory action.

Plaintiff does not allege she was subjected to the requisite materially adverse employment action. A retaliation plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation modified). *Burlington Northern* "emphasized that the 'materiality' requirement was necessary to ensure that only significant harms [are] actionable." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213-14 (4th Cir. 2019) (quoting *Burlington Northern*, 548 U.S. at 68-70). In *Muldrow*, the Supreme Court re-affirmed that, in the retaliation context, "materially adverse" means causing "significant harm." 601 U.S. at 357.

The alleged job-related reprimands and criticisms of Plaintiff's performance are insufficient to plausibly allege a materially adverse retaliatory action. *See, e.g., Teeter v. Loomis Armored U.S. LLC*, No. 7:20-cv-00079, 2021 WL 6200506, at *16 (E.D.N.C. Nov. 23, 2021) (reprimands without tangible adverse consequences do not amount to actionable adverse actions); *Hinton v. Va. Union Univ.*, 185 F. Supp.3d 807, 832 (E.D. Va. 2016) ("reprimands without collateral consequences are akin to non-actionable snubbing,

antipathy, and petty slights," and do not qualify as material adverse actions). Likewise, Plaintiff's allegations about the scheduling of her lunch breaks and early departures from work do not suffice. *See, e.g., Parsons v. Wynne*, 221 Fed. Appx. 197, 198-99 (4th Cir. 2007) (removal from an alternate work schedule would not have dissuaded a reasonable worker from making or supporting a charge of discrimination and therefore was not material adverse action); *Teeter*, 2021 WL 6200506, at *17 (changes to scheduled start times of the plaintiff's work shifts, without more, do not amount to material adverse actions).

Moreover, the denial of a request for accommodations, even if Plaintiff had exhausted her administrative remedies as to this allegedly retaliatory act, is not a materially adverse employment action for purposes of an ADA retaliation claim. *See Wilson v. Montgomery Cnty. Bd. of Trs.*, No. PWG-17-2784, 2018 WL 4300498, at *9 (D. Md. Sept. 10, 2018); *see also Floyd v. Lee*, 968 F. Supp.2d 308, 334 (D.D.C. 2013) (courts have reasoned that "if the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled.")   .

## IV. Plaintiff fails to plausibly allege extreme and outrageous conduct as required to state a claim for IIED.

To state a proper claim for IIED, a plaintiff must allege that the defendant engaged in: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress in another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Conduct is considered extreme and outrageous only when it is "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985) (citation modified). Whether conduct is extreme and outrageous is a question of law. *Id.*

North Carolina courts are reluctant to find IIED claims actionable within an employment claim. *Haburjak v. Prudential–Bache Sec. Inc.*, 759 F. Supp. 293, 302–03 (W.D.N.C. 1991). Accordingly, "Stating a viable claim of IIED under North Carolina law for conduct arising in the workplace is very difficult." *Allen v. City of Raleigh*, No. 5:13-CV-522-D, 2014 WL 840735, at *7 (E.D.N.C. Mar. 4, 2014).

Under these rigorous standards, this Court and others have found IIED claims actionable only where the alleged workplace conduct has been "extremely egregious," and involved behavior such as "sexual advances, obscene languages, and inappropriate touching." *Miller v. Gerber Collision (Northeast), Inc.*, No. 4:19-CV-18-D, 2019 WL 2527105, at *3 (E.D.N.C. June 19, 2019) (citation modified). *See, e.g., Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121 (1986) (denying summary judgment where the plaintiff alleged the defendant made sexually suggestive remarks to her while she was working, coaxed her to have sex with him and said he wanted to "take" her, brushed up against her, rubbed his penis against her buttocks, touched her buttocks with his hands, and when she rejected his advances, screamed profane names at her, threatened her with bodily injury, and advanced toward her with a knife and slammed it on a table in front of her); *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 181, 527 S.E.2d 712, 715, *disc. review denied*, 352 N.C. 357, 544 S.E.2d 563 (2000) (defendant "physically

assaulted plaintiff, ... [demanding] sexual relations ... [and] began masturbating, ultimately ejaculating upon plaintiffs clothing").

Here, Plaintiff does not allege she was subjected to any sort of inappropriate touching, profanity, threats of violence, or similar misconduct. She instead premises her IIED claim on the following allegations:

(a) Korff placed a Chucky doll in Plaintiff's chair, knowing she was afraid of dolls, and laughed at Plaintiff's reaction;

(b) When Plaintiff returned to work following a leave of absence, Briley remarked that she knew about the Chucky doll incident;

(c) Briley joked in the presence of Plaintiff's co-workers about Plaintiff making a "fraudulent discovery";

(d) Briley and Wood met with Plaintiff to address job-related errors, even though Plaintiff's co-workers also made mistakes and were allegedly treated "differently," when Truist knew the Chucky doll incident caused Plaintiff to suffer from PTSD, which required mental health treatment;

(e) Briley informed Plaintiff that her previously approved reduced schedule accommodation would be revoked because Truist had not received Plaintiff's updated paperwork; and

(f) Wood told Plaintiff she could not keep using her anxiety and emotional problems as an excuse and threatening to terminate her employment if she did not improve.

(Doc. 10 ¶¶ 14-16, 20, 22, 23-24, 31, 34, 70.)

Acts of unlawful discrimination, such as the alleged disparate treatment of Plaintiff and revocation of a previously approved accommodation, are not necessarily "extreme and outrageous" under North Carolina law. *See Lemay v. Bridgestone Bandag, LLC*, No. 5:11-CV-723-BO, 2012 WL 3524838, at *3 (E.D.N.C. Aug. 14, 2012) (refusal to accommodate the plaintiff's disability not extreme and outrageous); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp.2d 533, 545 (E.D.N.C. 2008) (the plaintiff alleged that the defendant "failed to promote [plaintiff] while promoting or hiring less qualified younger persons, refused her requests for additional training, failed to place her on mentoring status, retaliated against her for complaining about alleged race discrimination, and terminated her employment due to her age, race, and sex); *Atkins v. USF Dugan, Inc.*, 106 F. Supp.2d 799, 810–11 (M.D.N.C.1999) (conduct not extreme or outrageous when employee was told he was "too old and sick" to handle his job and was allegedly terminated in violation of federal and state discrimination laws); *Buser v. S. Food Serv., Inc.*, 73 F. Supp.2d 556, 573-74 (M.D.N.C. 1999) (not extreme and outrageous conduct where the plaintiff alleged that the defendants demanded that she return to work although she had taken an approved leave of absence and terminated her in violation of federal law, although the defendants knew or should have known of plaintiff's and her husband's poor medical conditions and financial difficulties). Consequently, Plaintiff's conclusory allegations that Defendant "intended to cause, and did cause [her] to suffer severe emotional distress" by subjecting her to "discrimination and retaliation based on her disabilities" and subjected her to disparate treatment by "deliberately treat[ing her] differently based on her disabilities" do not suffice. (Doc. 10 ¶¶ 41-42.)

Even taken as a whole, Plaintiff's allegations describe the sort of intemperate conduct that does not rise to the level of "extreme and outrageous" as a matter of law. Courts have found allegations of far more egregious conduct insufficient to support an IIED claim. *See, e.g., Payne v. Whole Foods Mkt. Grp., Inc.*, 812 F. Supp.2d 705, 708 (E.D.N.C. 2011) (the plaintiff allegedly was subjected to "ostracism, targeted criticism, false and anonymous accusation, and periodic intentional efforts to overwhelm him with work," and his co-workers played "indecent music," engaged in "indecent conversation," were "mean" to him, and withheld assistance); *Bendross v. Town of Huntersville*, 159 N.C. App. 228, 582 S.E.2d 726 (TABLE), 2003 WL 21649354, at *4-5 (2003) (the defendant strained the plaintiff's working relations with supervisors, subjected plaintiff to three internal investigations, imposed disciplinary action, and slammed chair against wall during conference with the plaintiff); *Guthrie v. Conroy*, 152 N.C. App. 15, 23-24, 567 S.E.2d 403, 410 (2001) (co-worker touched or rubbed the plaintiff's neck and shoulders, placed a lampshade on her head when she fell asleep at her desk, threw potting soil and water on her while she was planting flowers at work, remarked that he'd "always wanted to see [her] in a wet T shirt, and placed small objects between the legs of a "naked man" statuette that the plaintiff displayed on her windowsill at work and asked "how she liked it" with the additions); *Hogan*, 79 N.C. App. at 490-91, 340 S.E.2d at 121 (the defendant failed to grant the plaintiff maternity leave, made her carry heavy objects when she was pregnant, refused to allow her to leave work to go to the hospital, and then terminated her employment when she did so).

## V. Plaintiff fails to state an actionable claim for negligent infliction of emotional distress.

To state a claim for NIED under North Carolina law, a plaintiff must allege: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did, in fact, cause the plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Actionable negligence requires a showing that: "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Guthrie*, 152 N.C. App. at 25, 567 S.E.2d at 410-11

According to Plaintiff, Defendant was negligent when Korff placed a Chucky doll in Plaintiff's office chair, knowing she was afraid of dolls. (Doc. 10 ¶ 76.) Plaintiff further alleges that Truist acted negligently in the handling and investigation of Plaintiff's Human Resources complaint, in not properly dealing with the alleged discrimination and retaliation of its managers, and in not offering an appropriate remedy to Plaintiff." (*Id.* at ¶ 28.)

Plaintiff's NIED claim should be dismissed to the extent she attempts to relabel allegations of inherently intentional conduct, such as discrimination and retaliation, as negligence. This Court has dismissed claims based on similar allegations that an employer was negligent in permitting discrimination to occur and in supervising those who allegedly discriminated against the plaintiff. *See Bratcher*, 545 F. Supp.2d at 545; *see also Redman v. Am. Airlines, Inc.*, 3:22-cv-00515-RJC-DCK, 2023 WL 4768696, at *3 and n.1

(W.D.N.C. July 26, 2023) ("federal courts interpreting North Carolina law note with near uniformity that acts of discrimination . . ., because they are inherently intentional, cannot form the basis of [a NIED] claim; such claims simply allege no negligent conduct."); *Horne v. Cumberland Cnty. Hosp. Sys., Inc*., 228 N.C. App. 142, 148-49, 746 S.E.2d 13, 19 (2013) ("Allegations of intentional conduct … even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of [a NIED] claim.").

Moreover, the exclusive remedies provision of the North Carolina Workers' Compensation Act (the "Act") bar Plaintiff's NIED claim, regardless of whether that claim is based on the Chucky doll prank or Truist's alleged negligence in handling her HR complaint or supervising her managers. The Act's remedies are exclusive where the Plaintiff alleges an injury covered by its provisions. N.C. Gen. Stat. §§ 97-9 and 97-10.1. To fall within the scope of the Act, an injury must (1) be caused by an accident, (2) arise out of the claimant's employment, and (3) be sustained in the course of employment. *Wake Cnty. Hosp. Sys. v. Safety Nat. Cas. Corp*., 127 N.C. App. 33, 38–39, 487 S.E.2d 789, 792 (1997)(citation modified).

Relying on these exclusive remedy provisions, the North Carolina Court of Appeals affirmed the dismissal of this same Plaintiff's claim against her previous employer, Wells Fargo, based on allegations that she suffered mental injury because her employer acted negligently in pressuring her to perform the duties associated with her job. *Jones v. Wells Fargo Co*., 260 N.C. App. 705, 817 S.E.2d 497 (Table), 2018 WL 3733877, at *4 (Aug. 7, 2018). The court held, "An employee's remedies for injuries sustained in the course of

employment attributable to the negligence of an employer, a co-employee, or a supervisor, are limited to those expressly provided by the Workers' Compensation Act." *Id.* at *3.

The North Carolina Court of Appeals also has ruled that the exclusive remedies provisions barred a plaintiff's NIED claims based on her employer's alleged mishandling of her sexual harassment complaint where this negligence allegedly caused her severe emotional distress. *Shaw v. Goodyear Tire & Rubber Co.*, 225 N.C. App. 90, 104, 737 S.E.2d 168, 177-78 (2013). The *Shaw* court reasoned that plaintiff's injury was caused by accident, as the defendant's mishandling of her complaint was "an unlooked for and untoward event which is not expected or designed by the injured employee." *Id.* (citation modified). Moreover, the plaintiff's injury arose out of the employment, "in that complaining to an employer about harassment at work and the risk that the employer may not handle it properly is a natural and probable incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment." *Id.* (citation modified). Consistent with *Shaw*, this Court and others have dismissed negligence claims brought on similar grounds, holding that the Act's exclusivity provisions apply. *Epps v. BB&T Corp.*, 2019 WL 13297610, at *3 (M.D.N.C. May 28, 2019); *Hall v. Rockingham Cnty.*, No. 1:15CV938, 2016 WL 5400413, at *8 (M.D.N.C. Sept. 27, 2016); *Baldwin v. Tradesmen Int'l, Inc.*, No. 5:12-cv-00116-FL, 2013 WL 1192314, at *4 (E.D.N.C. Mar. 22, 2013).

Here, Plaintiff alleges that her injuries resulted from purportedly negligent acts during her employment with Truist. (Doc. 10 ¶¶ 16, 76-79.) The allegedly negligent doll prank took place in Plaintiff's workplace office during new hire training. Truist's allegedly

negligence related to its handling of her complaint to Human Resources, supervising her managers and allowing discrimination to exist all arose during Plaintiff's employment. The Act's exclusive remedies provisions apply, and Plaintiff's NIED claim should be dismissed. *Shaw*, 225 N.C. App. at 104, 737 S.E.2d at 177-78.

## VI.   Plaintiff fails to plausibly allege negligent supervision and retention.

North Carolina law requires a plaintiff alleging negligent retention or supervision to show: (1) a specific tortious act by an employee, (2) incompetency of an employee by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred, (3) the employer's actual or constructive notice of an employee's incompetency or unfitness, and (4) injury resulting from the employee's incompetency or unfitness. *See Medlin v. Bass*, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990). A claim for negligent retention or supervision requires allegations "that an employee of the employer 'committed a tortious act resulting in [the plaintiff's] injuries.*" Hartsell v. Duplex Prods., Inc*., 123 F.3d 766, 774 (4th Cir. 1997) (quoting *Waddle v. Sparks*, 331 N.C. 73, 87, 414 S.E.2d 22, 29 (1992)).

Here, Plaintiff alleges that Truist had actual or constructive knowledge of Korff's incompetence when he placed a Chucky doll in Plaintiff's office chair when he was aware that she was afraid of dolls. (Doc. 11 ¶ 84.) Plaintiff does not allege facts indicating Truist had advance notice of Korff's alleged incompetence **before** the doll incident, as required to establish a negligent supervision and retention claim. *See Medlin*, 327 N.C. at 591, 398 S.E.2d at 463 (affirming summary judgment in defendants' favor absent evidence the

defendants could have known of their employee's alleged incompetency prior to the incident on which the negligent retention claim was based).

Plaintiff further asserts that Truist knew, or should have known, of Briley's alleged incompetence when Briley told Plaintiff that she was aware of the Chucky doll incident and, on January 29, 2025, modified Plaintiff's approved schedule accommodation, having received no updated paperwork from Plaintiff, as it was reasonably foreseeable Briley would discriminate and retaliate against Plaintiff. (*Id.* at ¶ 85.) Plaintiff does not allege, however, that she reported Briley's alleged remark about the Chucky doll incident to Truist (and, even if she had, any such report would not have indicated incompetence on Briley's part). Although she claims her November 19th complaint to HR should have alerted Truist to Briley's incompetence (*id.* at ¶ 87), Plaintiff's only alleged report involved her belief that she was being treated differently than her co-workers and that Briley discussed her accommodations with the team. (*Id.* at ¶ 27.)

As to Wood, Plaintiff alleges that Truist knew or should have known of Wood's alleged incompetence when Wood told Plaintiff on January 29, 2025, that her reduced schedule was impacting Plaintiff's co-workers, that the job was not the right fit for Plaintiff, that Plaintiff could not keep using her health conditions as an excuse, and that her employment would be terminated if she did not improve. (*Id.* at ¶ 86.) Even assuming these allegations suggest incompetence (which is denied), the law requires ***advance*** notice of an employee's alleged incompetence before the tortious act resulting in Plaintiff's injury. *See Medlin*, 327 N.C. at 591, 398 S.E.2d at 463. Plaintiff contends that her complaint to Human

Resources about **Briley** on November 19, 2024, somehow should have alerted Truist to **Wood's** incompetence (*id*. at ¶ 87), but the Amended Complaint fails to connect those dots.

Perhaps most fundamentally, Plaintiff's negligent supervision and retention claim fails because she alleges no underlying common law tort. *Jackson v. FKI Logistex*, 608 F. Supp.2d 705, 708-09 (E.D.N.C. 2009) ("[T]he Fourth Circuit interpret[s] North Carolina law to require a common-law tort to underly a negligent retention and supervision claim."). Plaintiff fails to allege facts indicating that Korff's doll prank or Briley and Wood's alleged discrimination and retaliation constituted a tort under North Carolina Law. Violation of a federal statute, such as the ADA infractions alleged here, is not an actionable tort under North Carolina law and cannot serve as the underlying "tortious act" necessary for a negligent retention or supervision claim. *McLean v. Patten Communities, Inc*., 332 F.3d 714, 719 (4th Cir. 2003). Based on this Fourth Circuit precedent, this Court and other federal district courts have dismissed negligent retention and supervision claims that are based on alleged violations of federal anti-discrimination laws. *See Chestnutt v. Town of Ahoskie, N.C.*, No. 2:21-CV-00004-BO, 2021 WL 6125892, at *6 (E.D.N.C. Aug. 26, 2021); *Barrow v. Branch Banking & Tr. Co*., No. 3:16-cv-00675-RJC-DCK, 2017 WL 4124180, at *5 (W.D.N.C. Sept. 18, 2017); *Clausell v. Bayer Corp*., No. 5:15-CV-50-BO, 2015 WL 5146704, at *4 (E.D.N.C. Sept. 1, 2015); *Jackson*, 608 F. Supp.2d at 708-09.

## CONCLUSION

Truist respectfully requests that Plaintiff's claims be dismissed, in their entirety, for failure to state a claim upon which relief may be granted.

This the 24th day of July, 2025.

                                        */s/ Jill S. Stricklin*
                                        Jill S. Stricklin
                                        N.C. State Bar No. 20145
                                        Email: jstricklin@constangy.com
                                        */s/ Alexis M. Holloway*
                                        Alexis M. Holloway
                                        N.C. State Bar No. 61775
                                        Email: amholloway@constangy.com
                                        CONSTANGY, BROOKS, SMITH &
                                        PROPHETE, LLP
                                        One West 4th Street, Ste 850
                                        Winston-Salem, NC 27101
                                        Telephone: (336) 721-1001
                                        Facsimile: (336) 748-9112

                                        *Attorneys for Defendant*

## CERTIFICATE OF WORD COUNT

I hereby certify and attest that this **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** contains 8,362 words, including headings, footnotes, citations and quotations, but excluding the case caption, signature blocks, required certificates, and attachments, exhibits, affidavits, and other addenda pursuant to Local Rule 7.2(f)(1), based upon the word count generated by the word processing software used to prepare the document, and therefore complies with Local Rule 7.2(f)(3)(A).

This the 24th day of July, 2025.

*/s/ Jill S. Stricklin*
**Jill S. Stricklin**
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
One West 4th Street, Ste 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed this **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Lisa Walker (lisa@lisawalkerlaw.com).

This the 24th day of July, 2025.

*/s/ Jill S. Stricklin*
**Jill S. Stricklin**
N.C. State Bar No. 20145
Email: jstricklin@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
One West 4th Street, Ste 850
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*